## STATE OF IOWA *v.* CHICAGO, B. & Q. R. Co.

*(Circuit Court, S. D. Iowa, C. D.* January 22, 1889.)

1. REMOVAL OF CAUSES — CRIMINAL ACTIONS — RAILROAD COMPANIES — PENALTY FOR ILLEGAL RATES.

   Act Iowa, April 5, 1888, § 27, entitled "An act to regulate railroad corporations," provides "that any such railroad corporation guilty of extortion * * * shall forfeit and pay the state of Iowa not less than $1,000 nor more than $5,000, * * * to be recovered in a civil action by ordinary proceedings instituted in the name of the state." *Held*, that an action for such penalty, brought by the state, is one of a criminal nature, and not removable under act Cong. March 3, 1887, § 2, which provides "that any suit of a civil nature, at law or in equity, may be removed."

2. SAME.

   It is not the form, but the nature, of the action, that determines the question of removal.

On Motion to Remand.

*A. J. Baker*, Atty. Gen., and *C. E. Nourse*, for plaintiff.

*Dexter, Herrick & Allen* and *J. W. Blythe*, for defendant.

Before BREWER, SHIRAS, and LOVE, JJ.

BREWER, J. This is one of several actions brought in the state court against the defendant and other railroad companies, to recover penalties alleged to have been incurred under section 27 of an act of the legislature of Iowa, entitled "An act to regulate railroad corporations," etc., approved April 5, 1888. The defendants filed answers, and at the same time filed petitions for removal to the circuit court of the United States, on the ground that the cases were cases arising under the constitution of the United States. Transcripts of the records were filed in this court in apt time, and a motion has been made by the plaintiff to remand the cases to the state court. In support of this motion it is contended: (1) That the cases are not "suits arising under the constitution of the United States," within the meaning of the act of congress; (2) that they are not suits "of a civil nature;" (3) that they are not cases of which the circuit court is "given original jurisdiction" by section 1 of the act, and are not, therefore, removable. Noticing the second question, it is provided by section 2 of the removal act of March 3, 1887, "that any suit of a civil nature, at law or in equity, etc., may be removed;" and it is insisted that this is not a suit of a civil nature. By the act of April 5th, *supra*, certain acts are declared to be extortion. Section 26 declares that "any such railroad corporation guilty of extortion * * * shall, upon conviction thereof, be fined in any sum not less than one thousand dollars nor more than five thousand dollars, * * * such fine to be imposed in a criminal prosecution by indictment; or shall be subject to the liability prescribed in the next succeeding section, to be recovered as therein provided." This next succeeding section provides:

"Sec. 27. Any such railroad corporation guilty of extortion * * * shall forfeit and pay the state of Iowa not less than one thousand dollars nor more

than five thousand dollars, * * * to be recovered in a civil action by ordinary proceedings instituted in the name of the state of Iowa."

It will be observed that section 27 defines the action as a civil action, and in fact the one before us is in the ordinary form of an action of debt. But while the form is civil, is it of a civil or criminal nature? For obviously not the form, but the nature, of the action determines the question. The right to remove is given by act of congress, which prescribed both the limits and the conditions, and it cannot be that, after congress has thus legislated, the right of removal can be defeated by any legislation of the state changing the mere form in which litigation is to be carried on; otherwise the will of congress could be defeated by any state. Would it for a moment be tolerated that litigation as to the collection of a note could be held in the state and withheld from the federal court by any act of the state legislature providing that such collection should be by indictment, instead of the usual form of a civil action? *Railroad Co.* v. *Jones,* 29 Fed. Rep. 193. The question, therefore, is, what is the nature of the action provided for by section 27? The distinction between matters of a civil and those of a criminal nature is clear, and of frequent mention in the books. Blackstone says, (volume 4, p. 5:)

"The distinction of public wrongs from private, of crimes and misdemeanors from civil injuries, seems principally to consist in this: that private wrongs or civil injuries are an infringement or privation of civil rights which belong to individuals; public wrongs, or crimes and misdemeanors, are a breach and violation of public rights and duties due to the whole community, considered as a community, in its social aggregate capacity."

Rapalje and Lawrence, at page 21 of their Law Dictionary, say:

"An action is 'civil' when it lies to enforce a private right, or redress a private wrong. It is 'criminal' when instituted on behalf of the sovereign or commonwealth in order to vindicate the law by the punishment of a public offense."

Burrell, in his Law Dictionary, 294, says:

"A civil action is an action brought to recover some civil right, or to obtain redress for some wrong not being a crime or misdemeanor."

See 3 Bl. Comm. 2, 116. He also defines a civil right as—

"The right of a citizen; the right of an individual as a citizen; a right due from one citizen to another, the privation of which is a civil injury, for which redress may be sought by a civil action." *Burr. Law Dict.* 296.

Bouvier says a civil action is—

"A personal action, which is instituted to compel payment, or the doing of something which is purely civil." "At common law: An action which has for its object the recovery of private or civil rights or compensation for their infraction." *Bouv. Law Dict.* 317.

"Penal statutes or laws," say Rapalje and Lawrence, "are of three kinds: *Pœna pecunaria, pœna corporalis, pœna exilii.*" See, also, *Hussey* v. *More,* Cro. Jac. 415. The same authorities define "penal statutes" to be "those which impose penalties or punishment for offenses committed." Rap. & L. Law Dict. 945. And, further, "penalty" is a sum of money

payable as an equivalent or punishment for an injury. Id. Burrell defines "penalty" as—

"A punishment imposed by statute as the consequence of the commission of a certain specific offense; a pecuniary punishment; a sum of money imposed by statute to be paid as a punishment for the commission of a certain act." Burr. Law Dict. 286.

He defines a penal action as—

"An action upon a penal statute; an action for the recovery of a penalty given by statute."

In distinguishing between cases which are civil and those which are criminal in their nature, the supreme court of Maine, in *Beals* v. *Thurlow*, 63 Me. 9, says:

"The plaintiff does not sue to compel payment of any debt due to himself, or for the redress of any wrong done to himself, but simply to enforce a pecuniary penalty against a wrong-doer."

That a suit may be criminal in form and yet civil in its nature, or *vice versa*, is fully discussed by Mr. Justice HARLAN in *State* v. *Railroad Co.*, 33 Fed. Rep. 726–729. The action in that case was an information in the nature of *quo warranto*, instituted by the attorney general of Illinois, demanding of the Illinois Central Railroad by what warrant it claimed to have, use, and enjoy the powers, liberties, privileges, and franchises exercised by it in and over certain submerged portions of the lake front in the city of Chicago, and of constructing, operating, using, etc., docks, wharves, and piers in and upon said submerged lands. This action was commenced in the criminal court of Cook county, and was in form a criminal proceeding. In considering this, Mr. Justice HARLAN cites approvingly and quotes from *People* v. *Shaw*, 13 Ill. 581, and *Ensminger* v. *People*, 47 Ill. 387. *People* v. *Shaw* was an information in nature of *quo warranto* against certain persons for usurping the office of bridge commissioners, and the question arose upon the claim of right to a change of venue as provided for civil cases. CATON, J., speaking for the supreme court of Illinois, uses this language, as quoted by Mr. Justice HARLAN:

"In form this is a criminal proceeding, but it is only so in form. In substance it is for the protection of the private and individual rights of the relator and others in the precinct similarly situated. * * * It is the nature of the rights to be asserted and maintained to which we should look, rather than the form in which the party may be obliged to proceed to assert those rights, in giving a just interpretation to the statute."

The learned justice further cites and quotes from *Ensminger* v. *People*, *supra*; *People* v. *Holtz*, 92 Ill. 428; and from *Ames* v. *Kansas*, 111 U. S. 460, 4 Sup. Ct. Rep. 437,—to the effect that the information in *quo warranto* has long since ceased to be criminal in its nature, and concludes by saying:

"The decision in *Ames* v. *Kansas*, was distinctly to the effect that the nature of the right asserted and at issue * * * furnished the test whether a proceeding was of a civil or criminal nature."

That a case may partake something of the nature of both is as might be expected, and naturally it is not always clear which element predom-

inates. Thus, in a civil action for damages for a tort, punitive damages are sometimes awarded. There is therefore present the double element of a redress of a private injury and the punishment of a public wrong; but, inasmuch as the full recovery goes to the injured party, as he controls the whole proceeding, and the form of the action is civil, it may well be inferred that the civil element predominates, and the action be considered one of a civil nature. So there are *qui tam* actions brought to recover a penalty in which part of the recovery goes to the informer. In some of these actions the informer has suffered a private injury, which is compensated by the recovery, and sometimes his interest is only that of an informer. And there are actions in which the recovery is by direction of the legislature increased above the actual compensation, and the increase is by way of penalty. Obviously, in all these there are elements of a civil as well as a criminal nature. The case of *Herriman* v. *Railroad Co.*, 57 Iowa, 187, 9 N. W. Rep. 378, and 10 N. W. Rep. 340, is a good illustration. In that case the plaintiff had been overcharged, and brought his action against the company, under the statute, for five times the overcharge. The court held that this was a penal action, and barred by the statute of limitations applicable thereto. Commenting on the statute it uses this language:

"This, to our minds, shows very clearly that the essential object of the provisions was not to afford the aggrieved individual an adequate remedy, but to protect the public by deterring railroads from committing a misdemeanor, which a violation of the act was declared to be. The provision, then, is essentially criminal, rather than remedial. This is sufficient to enable us to determine to what the statute of limitation applies."

And it also contrasts this case with an earlier case under a different statute and a different penalty, in which the judgment of the court had been that the action was of a civil and remedial, rather than a criminal, nature. Another case which well illustrates this is the recent case of *Boyd* v. *U. S.*, 116 U. S. 616, 6 Sup. Ct. Rep. 524. In this an information has been filed by the district attorney for the seizure of certain property under the revenue law. The statute provided for punishment by fine and imprisonment, and also for the forfeiture of the goods. The latter was all that was sought in this action, which in form was confessedly civil. Advantage was sought to be taken of a section of the federal statutes compelling the defendant in effect to furnish testimony. The court held that the proceeding could not be sustained, on the ground that the action was one of a criminal nature, and that under the fifth amendment no person in a criminal case could be compelled to be a witness against himself. Speaking for the court, Mr. Justice BRADLEY used this language:

"We are clearly of opinion that proceedings instituted for the purpose of declaring a forfeiture of a man's property by reason of offenses committed by him, though they may be civil in form, are in their nature criminal. In this very case the ground of forfeiture, as declared in the twelfth section of the act of 1874, on which the information is based, consists of certain acts of fraud committed against the public revenue in relation to imported merchan-

dise, which are made criminal by the statute; and it is declared that the offender shall be fined not exceeding five thousand dollars, nor less than fifty dollars, or he imprisoned not exceeding two years, or both; and in addition to such fine, such merchandise shall be forfeited. These are the penalties affixed to the criminal acts; the forfeiture sought by this suit being one of them. If an indictment has been presented against the claimants, upon conviction the forfeiture of the goods could have been included in the judgment. If the government prosecutor elects to waive an indictment, and to file a civil information against the claimants, (that is, civil in form,) can he, by this device, take from the proceeding its criminal aspect, and deprive the claimants of their immunities as citizens, and extort from them a production of their private papers, or, as an alternative, a confession of guilt? This cannot be The information, though technically a civil proceeding, is in substance and effect a criminal one. As showing the close relation between the civil and criminal proceedings on the same statute in such cases, we may refer to the recent case of *Coffey* v. *U. S.*, 116 U. S. 436, 6 Sup. Ct. Rep. 437, in which we decided that an acquittal on a criminal information was a good plea in bar to a civil information for the forfeiture of goods arising upon the same acts. As, therefore, suits for penalties and forfeitures incurred by the commission of offenses against the law are of this *quasi* criminal nature, we think that they are within the reason of criminal proceedings for all the purposes of the fourth amendment of the constitution, and of that portion of the fifth amendment which declares that no person shall be compelled in any criminal case to be a witness against himself."

And in a separate opinion MILLER, J., says:

"I am of opinion that this is a criminal case within the meaning of the fifth amendment to the constitution of the United States."

These cases and considerations disclose the difference between matters of a civil and of a criminal nature, and also affirm the proposition that not the form, but the nature, of the action, determines the question of removal. From them we pass to inquire, what is the nature of this action? The party plaintiff is the state. It controls the litigation. It receives all the proceeds. The action proceeds from no contractual obligation of the state. It is not to enforce any rights of it as an individual. It is purely governmental in its nature. Its aim is to punish for a violation of the criminal laws of the state. The act defines "extortion," and declares it to be a "misdemeanor." Both sections 26 and 27 provide simply for punishment. The form of the action prescribed in the two sections is different, but the purpose of each is the same,—to compel obedience to the laws of the state by punishment for a violation thereof. There is no individual right to be asserted; no private injury to be compensated or redressed. The proceeding under each section is by the state in its governmental capacity to compel obedience to its laws. The language in each section is, "the party guilty;" language apt for criminal purposes, and not for civil. The state, under section 27, sue not to recover for goods sold, for work done, on account of contract broken, or any private obligation of the defendant to the state, but simply and solely to impose punishment for violation of law. Can there be a doubt, under the distinctions heretofore adverted to, that this is an action of a criminal, rather than of a civil, nature? If it be said that many courts have held, and that the statutes of Iowa provide, that a civil action may be brought to

recover a penalty or forfeiture, it must also be observed that thereby only the form of the action is determined, but not its purpose or nature. I shall not attempt to notice the multitude of authorities which are cited, simply observing that many of them consider only the question of the form of the action, and not its nature, while those that do discuss the nature of the action must be considered as overruled by the latter enunciations of the supreme court. If congress had intended that the mere form of the action determined the right of removal, apt language would have been, "actions civil in form," or perhaps the more general expression, "civil actions;" but when the language is, "of a civil nature," it discloses an intent, as affirmed by the cases of *Ames* v. *Kansas*, 111 U. S. 460, 4 Sup. Ct. Rep. 437, and *State* v. *Railroad Co.*, 33 Fed. Rep. 726, that the court should always look beyond the matter of form to the purpose, object, nature of the action. Nor is it strange that this language was selected. While it may be within the power of congress to transfer to the federal court all actions to enforce the penal laws of the state in which questions of a federal nature may arise, yet a due regard for the dignity of the state, and a proper harmony between the state and federal governments, doubtless prompted congress to leave to the state courts the primary decision of all such actions, preferring that if a party thought any such rights were denied in the state courts he should seek relief through the appellate jurisdiction of the supreme court of the United States. That such is a fitting mode of procedure may be conceded, and that such was the intent of congress is indicated by the language that is used.

It is said that in the cases of *Mugler* v. *State*, and *Ziebold* v. *State*, 123 U. S. 623, 8 Sup. Ct. Rep. 273, the supreme court impliedly recognized the right to remove a bill in equity filed to enjoin the operation of a brewery, which, though in form civil in its nature, was clearly an action to enforce the penal laws of the state. In reply to this it may be said that in *Schmidt* v. *Cobb*, 119 U. S. 286, 7 Sup. Ct. Rep. 1373, an order remanding a similar case was affirmed in the supreme court by a divided vote; that the *Cases of Mugler* and *Ziebold* were considered and decided together; that the *Mugler Case* was on appeal from the supreme court of Kansas; and that in the *Ziebold Case* counsel preferred to discuss and have determined the absolute rights of the parties, rather than any question of form or removal. So that the question of removal seems not to have been considered by the court.

And now it becomes necessary to notice the last utterance of the supreme court, in the case of *Wisconsin* v. *Insurance Co.*, 127 U. S. 265, 8 Sup. Ct. Rep. 1370. That case was this: The state of Wisconsin brought an action in one of her own courts against the defendant, to recover a penalty prescribed by the statutes for a transaction of insurance business in the state without a license. The action was a civil action in form, to-wit, an action of debt. The statutes provided that one-half the penalty should go to the state, and one-half to the insurance department, to cover expenses, etc. Judgment was recovered in that action for the amount of the penalty. The defendant was a citizen of the state of Lou-

isiana. Thereupon the state of Wisconsin brought an original action in the supreme court of the United States against the defendant, a citizen of another state, on that judgment. It will be seen that that action is somewhat removed from this in that, not being an original action to recover a penalty, it was to recover on a judgment in a civil action for a penalty. By the constitution of the United States the supreme court has original jurisdiction of controversies between a state and a citizen of another state. Yet notwithstanding this general jurisdiction of the supreme court, it held that it had no jurisdiction of this action. Several lines of argument were followed by the court in reaching its conclusion. It held that that grant of jurisdiction was of judicial power, and was not intended to confer upon the courts of the United States jurisdiction of a suit or prosecution by the one state of such a nature that it could not, on the settled principle of public and international law, to be entertained by the judiciary of another state at all; that the enforcement of the criminal laws of a state was by such principles limited exclusively to the courts of the state whose laws were charged to have been violated; and that the form of the action prescribed was immaterial,—courts looking ever to the substance, nature, and purpose of the action; and that in the case at bar, although the form of the action was civil, being an action of debt, to recover on a judgment in an action of debt for a penalty, it was in substance of a criminal nature, and an effort upon the part of the state to enforce its criminal laws. The language of the court is as follows:

"The statute of Wisconsin under which the state recovered in one of her own courts the judgment now and here sued on, was in the strictest sense a penal statute, imposing a penalty upon any insurance company of another state doing business in the state of Wisconsin without having deposited with the proper officer of the state a full statement of its property and business during the previous year. Rev. St. Wis. § 1920. The cause of action was not any private injury, but solely the offense committed against the state by violation of her law. The prosecution was in the name of the state, and the whole penalty, when recovered, would accrue to the state, and be paid, one-half into her treasury, and the other half to her insurance commissioner, who pays all expenses of prosecuting for and collecting such forfeitures. St. Wis. 1885, c. 395. The real nature of the case is not affected by the forms provided by the law of the state for the punishment of the offense. It is immaterial whether by the law of Wisconsin the prosecution must be by indictment or by action; or whether, under that law, a judgment there obtained for the penalty might be enforced by execution, by *scire facias*, or by a new suit. In whatever form the state pursues her right to punish the offense against her sovereignty, every step of the proceeding tends to one end,—the compelling the offender to pay a pecuniary fine by way of punishment for the offense."

Though this case is not precisely in point, yet the thought underlying it, the principle which controlled the decision, is applicable here; and it must be adjudged that in the opinion of the supreme court of the United States—the ultimate authority on questions of this kind—an action to enforce a penalty, whatever may be its form, is one of a criminal nature. As such, within the removal act, it is not a removable case. My conclusion therefore is that this action is not one that can be removed to the federal courts, and the motion to remand must be sustained.

I have given this subject long and patient examination in view of the vast interests and the importance of the question, and, against my first impressions, I have been forced to the conclusion I have thus announced. I appreciate fully what counsel urge of the difficulties which, as they say, such a construction will place in the way of their reliance upon the protection of the federal constitution; but, notwithstanding these difficulties, back of all the statutes, and all the litigation in the state, stands that high tribunal, the federal supreme court, which will ultimately determine and fully protect all rights guarantied to the defendant by the federal constitution. The motion to remand will be sustained. The same order will be entered in all the cases of a similar nature now pending in this court.

Judge SHIRAS concurs in the foregoing opinion. Judge LOVE gives no opinion.