CITY OF MONTGOMERY, ALA., v. POSTAL TELEGRAPH-CABLE CO.

POSTAL TELEGRAPH-CABLE CO. v. CITY OF MONTGOMERY, ALA.

(District Court, M. D. Alabama, N. D. November 23, 1914.)

No. 200.

1. REMOVAL OF CAUSES (§ 89*)—PROCEEDINGS—ORDER OF REMOVAL—NECESSITY.

Where a suit of a civil nature involves the prerequisites necessary to a removal from the state to the federal court, and the application and bond for removal are regularly made, the case is removed by force of the statute (Judicial Code [Act March 3, 1911, c. 231] 36 Stat. 1095 [Comp. St. 1913, § 1011]) § 29, without the necessity of an order of the state court.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 162, 165, 189, 192–195, 197, 200, 201; Dec. Dig. § 89.*]

2. REMOVAL OF CAUSES (§ 89*)—CAUSE NOT REMOVABLE—ATTEMPT TO REMOVE—FILING PETITION AND BOND.

Where an attempt is made to remove a cause not in fact removable, the filing of the petition and bond in the state court, even though accepted and the state court proceeds no further in the suit, does not operate to oust it of jurisdiction, nor confer jurisdiction on the federal court.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 162, 165, 189, 192–195, 197, 200, 201; Dec. Dig. § 89.*]

3. REMOVAL OF CAUSES (§ 4*)—CAUSES REMOVABLE—"SUIT OF A CIVIL NATURE"—CORPORATION—SUIT TO RESTRAIN BUSINESS WITHOUT LICENSE—CITY ORDINANCE.

Montgomery city ordinances provide that every person or corporation operating a telegraph office in the city shall pay an annual license tax of $125 on the business done at such office, exclusive of interstate and United States government business, and in addition 1¼ per cent. on the gross receipts of all intrastate business the previous year, except that done for the United States, and except in excess of $3,000, and that any person doing such business without having first obtained such license shall, on conviction, be fined not less than $10 nor more than $100 for each day such business is transacted. *Held*, that such ordinance should be treated as a criminal state statute, and hence a suit by the city to restrain a telegraph company from doing business therein in violation of the ordinance was not a suit of a civil nature, and was therefore not removable to the federal court; the phrase "suit of a civil nature" being construed to mean a suit for the remedy of a private wrong, the test being whether the law is penal in the strict and primary sense, and whether the wrong is to the public or to the individual (citing Words and Phrases, Suit of Civil Nature).

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 11–20; Dec. Dig. § 4.*]

Suit by the City of Montgomery, Ala., against the Postal Telegraph-Cable Company, and ancillary bill by the Postal Telegraph-Cable Company against the City. On motion to remand to the state court. Motion granted, and defendant's application for an injunction in its ancillary bill denied.

Edward S. Watts, City Atty., of Montgomery, Ala., for City of Montgomery, Ala.

Martin & Martin and Rushton, Williams & Crenshaw, all of Montgomery, Ala., for Postal Telegraph-Cable Co.

CLAYTON, District Judge. This cause is submitted upon the motion of the city of Montgomery to remand the case to the city court, and also upon the motion of the Postal Telegraph-Cable Company, the respondent in the original case and complainant in the ancillary bill filed here for an injunction against the city seeking to restrain the further prosecution of the suit in the city court.

The 17 grounds assigned for the remandment of the case may be reduced to 3: First, that there is no diversity of citizenship; second, that the matter in controversy does not exceed the sum or value of $3,000, exclusive of interest and costs; and, third, that the suit is not one of a "civil nature," for the reason, as asserted, it grows out of the infraction of a penal ordinance, and involves a remedy for the enforcement of the ordinance and for punishment for the infraction— in other words, that this legally ordained city law is a criminal or quasi criminal statute of the state, and that, therefore, this case, arising under such ordinance, is not triable in the federal court.

The court is of opinion that the third ground of the motion for remandment is well taken and is decisive of this case. This being so, it is unnecessary to consider whether diversity of citizenship is shown, or whether the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $3,000.

The state statute requires the defendant in such case "to appear and demur, plead to or answer the bill within thirty days after service." Code Ala. § 3097. On October 24, 1914, the defendant Telegraph Company filed in the city court a petition and bond for the removal of the cause to this court. This was done "before the defendant is [was] required by the laws of the state * * * to answer or plead to the declaration or complaint of the plaintiff." Judicial Code, § 29.

The petition alleged that the matter in controversy exceeded, exclusive of interest and costs, the sum or value of $3,000, and that the suit was between citizens of different states. It thus appears that the petition and bond for removal were filed in seasonable time (Wabash West. R. Co. v. Brow, 164 U. S. 271, 17 Sup. Ct. 126, 41 L. Ed. 431), and that, so far as the citizenship of the parties and the sum or value of the matter in controversy are concerned, presented a removable case if the cause is of a "civil nature."

Upon the filing of the petition and bond, the judge of the state court refused to sign an order removing the case to this court. Thereupon, on November 4, 1914, the Telegraph Company filed, in this court, a certified transcript of the proceedings in the state court, including its petition and bond for removal. Afterwards, on November 7, 1914, the Telegraph Company filed its ancillary bill in this court, praying for an injunction restraining the city of Montgomery from further prosecuting the original case in the state court.

The original bill filed by the city of Montgomery in the case sought to be removed here sets out the ordinance in the following language:

"Each person, firm or corporation, or officer or manager thereof, having, maintaining, or operating a telegraph office in the city of Montgomery, shall pay an annual license tax of $125 upon the business done at such office of sending and receiving telegraph messages to and from points in the state of

Alabama, but such license shall not be upon business done for the United States government nor upon interstate business. They shall pay, in addition, one and one-fourth of one per cent. on the gross receipts on all intrastate business during the previous year, except that done for the United States government, and except in excess of three thousand ($3,000.00) dollars, certified statement thereof to be furnished the city clerk when application is made for the license."

"Any person, firm or corporation who shall engage in any business, trade or profession or keep any establishment or do any business or any act for which a license is required by this Code or any ordinance or by-law of the city for which a license is or may be required by any other law or ordinance of the city, without having first obtained such license, shall, upon conviction, for each day such business, trade or profession or such establishment is kept or carried on and for each act so done, without such license, be fined not less than ten nor more than one hundred dollars, unless a different manner is prescribed by this Code or some other ordinance or by-law of the city council."

It is alleged in the bill that the Telegraph Company is doing an intrastate business in the city; that it has not paid, and still refuses to pay, the license tax, and therefore, it is averred, the company is doing its intrastate business in violation of the above ordinance making it an offense or misdemeanor to carry on such telegraph business without having paid the required license tax. The bill further avers that, notwithstanding numerous arrests and convictions of defendant's manager in the state court, for violations of the above ordinance, the Telegraph Company continues to do an intrastate business in the city of Montgomery.

An injunction is prayed against the defendant company, restraining it from continuing to do intrastate business in the city in violation of the ordinance, and for a suitable decree against the Telegraph Company for the amount of the license tax for 1914, $125, together with a penalty of 10 per cent. ($12.50), and a fee of 50 cents for the issuance of the license.

It will be observed that the ordinance is so framed as to exclude from its operation business done by the defendant company for the United States as well as its interstate business; and the original bill filed in the city court, as stated above, is likewise so framed as to exclude business done for the government and all interstate business. Therefore no question of interfering with an agency of the federal government, or with commerce between the states, is presented. See Williams v. City of Talladega, 226 U. S. 404, 33 Sup. Ct. 116, 57 L. Ed. 275.

[1] It is well settled that if the case is a "suit of a civil nature," and the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000, and the parties are citizens of different states, and proper petition and bond are timely presented to the state court, no order of the state court is essential to the removal of the case to this court. In such case, the statute (Judicial Code, § 29) operates, proprio vigore, to remove the case from the state court and into the federal court. And, in such case, any subsequent proceeding in the state court is coram non judice. Crehore v. Ohio & M. Ry. Co., 131 U. S. 240, 9 Sup. Ct. 692, 33 L. Ed. 144; Railroad v. Mississippi, 102 U. S. 135, 26 L. Ed. 96; Railroad Co. v. Koontz, 104 U. S. 5, 15, 26 L. Ed. 643; Gordon v. Longest, 16 Pet. 97, 10 L. Ed. 900;

Donovan v. Wells Fargo & Co., 169 Fed. 363, 94 C. C. A. 609, 22 L. R. A. (N. S.) 1250; Steamboat Co. v. Tugman, 106 U. S. 118, 1 Sup. Ct. 58, 27 L. Ed. 87; Marshall v. Holmes, 141 U. S. 589, 12 Sup. Ct. 62, 35 L. Ed. 870.

[2] It is also well settled that if the case sought to be removed from the state court does not come within the provisions of the Constitution and statutes of the United States, relating to the removal of causes of a civil nature, the filing of the petition and bond in the state court, even where such petition and bond are accepted and the state court proceeds no further in the suit, does not operate to oust the state court of jurisdiction; and in such case the controversy is not rightfully subjected to the jurisdiction of the federal court. In other words, " * * * the filing of a petition for the removal of a suit which is not removable does not work a transfer." Crehore v. Ohio & M. Ry. Co., supra; Insurance Co. v. Pechner, 95 U. S. 183, 24 L. Ed. 427; Amory v. Amory, 95 U. S. 186, 24 L. Ed. 428; Traction Co. v. Mining Co., 196 U. S. 239, 245, 25 Sup. Ct. 251, 49 L. Ed. 462.

[3] If this case is not a "suit of a civil nature," it is not removable, and therefore cannot be subjected to the jurisdiction of the federal court; and, in determining the nature of the suit, the court must look to the subject-matter of the litigation, and not to its form. In Moloney v. American Tobacco Co. (C. C.) 72 Fed. 801, it was said:

"A question here is whether or not the present proceeding is a suit of a civil nature. *This court does not adjudicate upon penal or criminal statutes of a state.* The purpose of this information is to enforce against the American Tobacco Company the prohibition from doing business in Illinois, and the cause of action alleged is conduct which, within the meaning of the statute, if it have any meaning, is an offense or misdemeanor. The information does not show, as the ground of the action, any contract right in the state, or any property right or easement vested in the state, as trustee, representing the public or otherwise. The action is based on a statute or rule of conduct which the state, as a governing agent, has prescribed, and the violation of which, on the theory of the information, is an offense or misdemeanor. This is not, in its nature, a suit to recover for, or stop the continuance of, an injury. It is the prosecution of an offender against a criminal statute. * * * So, here, the circumstance that an injunction is the instrument, and apparently the only instrument, of the state's displeasure, does not change the essential nature of the conduct complained of, or of the legal sanction to which said conduct must be referred."

In Arkansas v. St. Louis & S. F. Ry. Co. (C. C.) 173 Fed. 572, the state law provided that any operator of a railroad who committed any violation of the law, for which no other penalty was prescribed, should be fined not less than $500 nor more than $3,000, and that the penalty was recoverable in the name of the state. It was also provided that, where there was a failure on the part of the shipper to give routing instructions, it was the duty of the railroad receiving the shipment to forward it by such route as would make the lowest freight rate. The railroad company received a shipment of lime at one point in the state, consigned to another point in the state. No instruction as to routing was given. The railroad made the shipment over its own road to a point in Oklahoma, and then by another railroad to the point of consignment in Arkansas. Suit was filed in the

name of the state against the initial railroad, alleging that the route over which the shipment was made charged a freight rate of 23 cents per hundredweight, and that the shipment should have been made over the line of the initial carrier and a shorter connecting line to the point of consignment; the original and connecting lines being wholly in Arkansas. It was alleged that this latter route was a reasonable one, and that the cost of the shipment over it would have been only 12 cents per hundredweight. The penalty was claimed, etc. On the application of the railroad the case was removed to the federal court. The state moved to remand on the ground that the case was not a "suit of a civil nature," but was for the recovery of a penalty. The court, in granting the motion, said:

"The question presented and urged at the hearing was that the suit is not of a civil nature. The question therefore is: What is the nature of the action provided by section 6813, Kirby's Dig. Ark.? After a most careful and patient investigation of a wide range of authorities, I have reached the conclusion that the action, while civil in form, is in its nature criminal. This case, therefore, must be remanded to the state court, solely upon the principle decided in the case of Iowa v. Chicago, B. & Q. R. Co. [C. C.] 37 Fed. 497, 3 L. R. A. 554, and which case seems to have been acquiesced in and is in harmony with various cases, among others, Moloney v. Am. Tob. Co. [C. C.] 72 Fed. 801; State of Indiana v. Alleghany Oil Co. [C. C.] 85 Fed. 870; Ferguson v. Ross [C. C.] 38 Fed. 161, 3 L. R. A. 322; State of Texas v. Day Land & C. Co. [C. C.] 41 Fed. 228."

"Suit of a civil nature" means a suit for the remedy of a private wrong. Words and Phrases, vol. 7, p. 6779; Koch v. Vanderhoof, 49 N. J. Law, 619, 9 Atl. 771.

In Ferguson v. Ross (C. C.) 38 Fed. 161, 3 L. R. A. 322, the defendant sued in his official capacity to recover certain penalties, and the court held that the proceeding was of a "penal and not civil nature," within the meaning of the removal act.

In the case of State of Texas v. Day Land & C. Co. (C. C.) 41 Fed. 228, 230, it was said:

"The test whether a suit at law or in equity is a suit of a civil nature, or of a criminal nature, is the nature of the right asserted and at issue. Ames v. Kansas, 111 U. S. 460, 4 Sup. Ct. 437 [28 L. Ed. 482]. See, also, Boyd v. U. S., 116 U. S. 616, 6 Sup. Ct. 524 [29 L. Ed. 746]; Coffey v. U. S., 116 U. S. 436, 6 Sup. Ct. 437 [29 L. Ed. 684]. It is not the form, but the nature, of the action that determines the question of removal."

And in Huntington v. Attrill, 146 U. S. 657, 13 Sup. Ct. 224, 36 L. Ed. 1123, the court said:

"The test whether a law is penal, in the strict and primary sense, is whether the wrong sought to be redressed is a wrong to the public, or a wrong to the individual, according to the familiar classification of Blackstone: 'Wrongs are divisible into two sorts or species: Private wrongs and public wrongs. The former are an infringement or privation of the private or civil rights belonging to individuals, considered as individuals, and are thereupon frequently termed civil injuries; the latter are a breach and violation of public rights and duties, which affect the whole community, considered as a community.'"

A federal court will not treat as removable, and therefore will not take jurisdiction of, a suit brought in a state court to enforce a criminal or quasi criminal state statute, or of a suit brought to recover a penalty under such state statute.

In Iowa v. Chicago, B. & Q. R. Co. (C. C.) 37 Fed. 497, 503, 3 L. R. A. 554, the court said:

"* * * An action to enforce a penalty, whatever may be its form, is one of a criminal nature. As such, within the Removal Act, it is not a removable case."

And again in Iowa v. Chicago, B. & Q. R. Co., supra, the court said:

"And now it becomes necessary to notice the last utterance of the Supreme Court, in the case of Wisconsin v. Insurance Co., 127 U. S. 265, 8 Sup. Ct. 1370 [32 L. Ed. 239]. That case was this: The state of Wisconsin brought an action in one of her own courts against the defendant to recover a penalty prescribed by the statutes for a transaction of insurance business in the state without a license. The action was a civil action in form, to wit, an action of debt. The statutes provided that one-half of the penalty should go to the state, and one-half to the insurance department, to cover expenses, etc. Judgment was recovered in that action for the amount of the penalty. The defendant was a citizen of the state of Louisiana. Thereupon the state of Wisconsin brought an original action in the Supreme Court of the United States against the defendant, a citizen of another state, on that judgment. It will be seen that that action is somewhat removed from this, in that, not being an original action to recover a penalty, it was to recover on a judgment in a civil action for a penalty. By the Constitution of the United States the Supreme Court has original jurisdiction of controversies between a state and a citizen of another state. Yet, notwithstanding this general jurisdiction of the Supreme Court, it held that it had no jurisdiction of this action. Several lines of argument were followed by the court in reaching its conclusion. It held that that grant of jurisdiction was of judicial power, and was not intended to confer upon the courts of the United States jurisdiction of a suit or prosecution by the one state of such a nature that it could not, on the settled principle of public and international law, be entertained by the judiciary of another state at all; that the enforcement of the criminal laws of a state was by such principles limited exclusively to the courts of the state whose laws were charged to have been violated; and that the form of the action prescribed was immaterial—courts looking ever to the substance, nature, and purpose of the action; and that in the case at bar, although the form of the action was civil, being an action of debt * * * for a penalty, it was in substance of a criminal nature, and an effort upon the part of the state to enforce its criminal laws."

In Barron v. City of Anniston, 157 Ala. 399, 402, 48 South. 58, 59, it was held that a proceeding for the recovery of fines and penalties, *imposed by a city ordinance,* are quasi criminal and are governed by the same rules of procedure and evidence which control in criminal cases. And there the court said:

"* * * Proceedings for the recovery of fines and penalties are quasi criminal, and 'should be conducted with greater regard to strictness than attaches to pleadings in civil cases.' * * * Again, this court has said that proceedings for the violation of city ordinances are in no sense 'civil causes,' but are 'punitive regulations,' and the object of a proceeding for the violation of them is not the redress for a civil injury, but the punishment of an offender against the peace and good order of society. Hence they are termed 'quasi criminal proceedings.'"

In the present case the city ordinance is to be treated as as state statute, and the rule stated in Iowa v. Chicago, B. & Q. R. Co., supra, is to govern in the consideration of the motion to remand. In Davis & F. Mnfg. Co. v. Los Angeles, 189 U. S. 207, 23 Sup. Ct. 498, 47

L. Ed. 778, municipal ordinances were assailed on the ground that they were unconstitutional and the court held that:

"The state having delegated certain powers to the city, the ordinances of the municipal authorities in this particular are the acts of the state through one of its properly constituted instrumentalities, and their unconstitutionality is the unconstitutionality of a state law within the meaning of section 5 of the Circuit Court of Appeals Act [Act March 3, 1891, c. 517, 26 Stat. 827 (Comp. St. 1913, § 1215)]. City Railway v. Citizens' R. R. Co., 166 U. S. 557 [17 Sup. Ct. 653, 41 L. Ed. 1114]; Penn Mutual Life Ins. Co. v. Austin, 168 U. S. 685, 694 [18 Sup. Ct. 223, 42 L. Ed. 626]; St. Paul Gaslight Co. v. St. Paul, 181 U. S. 142, 148 [21 Sup. Ct. 575, 45 L. Ed. 788]."

Therefore the city ordinance must be treated as the criminal statute of the state. The doing of intrastate business by the defendant company, without having first taken out the license required by the ordinance, is an offense or misdemeanor, and the continued violation of the ordinance, according to the theory of the bill, is a public nuisance, which is sought to be abated by permanent injunction. The bill is a means adopted by the city for the enforcement of its penal ordinance. The state court is a court of competent jurisdiction, and doubtless will properly adjudicate this controversy. However that may be, a removable cause is not presented to this court.

It was suggested, during the argument, that the bill filed in the city court is without equity, because there is an adequate remedy at law—an action for the amount of the license tax—and, again, that the prayer of the bill to restrain the Telegraph Company from further carrying on its intrastate business is inconsistent with the prayer for the recovery of the amount of the license tax, the payment of which, it is insisted, would authorize the doing of intrastate business by the Telegraph Company. But these suggestions go to the equity of the bill, and, if sound, can be made available as defense in the city court. On motion to remand, the federal court will not inquire into the sufficiency of the plaintiff's pleadings. Smith v. Camas Prairie Ry. Co. (D. C.) 216 Fed. 799.

From what has been said, it follows that this case must be remanded to the city court of Montgomery, and, inasmuch as the original case has been remanded, the application for the injunction, prayed for in the ancillary bill, must be denied.

Order and decree will be entered accordingly.