HENRY B. GALES v. J. W. HAILMAN.

J. W. HAILMAN v. HENRY B. GALES.

11    515
33 SC ² 75

1. A shipper, who has received from his insurer the part of the loss insured against, may sue the carrier on the contract of bailment, not only in his own right for the unpaid balance due to himself, but as trustee for what has been paid by the insurer in case of the carrier.

2. And upon the trial of such a case, the court will restrain the carrier from setting up the insurer's payment of his part of the loss, as satisfaction for so much of the demand at law.

3. The carrier cannot, in case of his own liability, call upon the insurer for contribution, upon the principle of double insurance : for the carrier is not an insurer, though he is sometimes inadvertently called so.

ERROR to the District Court of Allegheny.

*Sept.* 19. A writ of error was sued out in this case by Henry B. Gales, the plaintiff below, and also by J. W. Hailman, the defendant.

This was an action on the case by Gales against Hailman and others, owners of the steamboat "Marion," as common carriers. The declaration alleged the shipment of the plaintiff's goods on the steamboat; a contract to carry the goods from Pittsburgh to Ghent, in Kentucky; and the loss of the goods.

The defendants not having reserved the right of re-shipping at another port by the bill of lading, nevertheless placed the goods on board the steamboat "Export," at Cincinnati, and the "Export" having sunk on the way, and the goods never having come to the hands of the plaintiff, the action was brought for the recovery of $2,632.46, the value of the goods. The plaintiff received, on account of his loss, from an insurance company in Cincinnati, with which he had insured the safe passage and delivery of the goods, $2,114.87¼. The insurance company had received the damaged goods from the "Export," and realized from their sale the sum of $1,282.92.

Upon these facts, the parties submitted to the court below to determine—

1. Whether the plaintiff is entitled to recover any sum, and if not, to enter judgment for defendant.

2. Whether he is entitled to recover the difference between his said loss, and the sum he received from said insurance company, and interest thereon for his own benefit, and if so, to render judgment for the amount.

3. Whether he is entitled to recover, for the benefit of said insurance company, the difference between said proceeds of sale and said sum paid by said insurance company and interest, and if so, to embrace that sum in the judgment in favour of the plaintiff, with leave to either party to bring a writ of error on the judgment.

The defence arose from the fact that the plaintiff had received remuneration in part from the insurers. The defendants alleged that plaintiff had no right to recover as against them at all; that, if entitled to recover, he could only recover the difference between the amount received from the insurance company, and the value of the goods with interest; and that, if entitled to recover on behalf of the insurance company, the owners of the steamboat "Export" being insurers in legal contemplation, the loss must be divided

between them and the insurance office, in the same manner as if there had been a double insurance.

The judgment of the court below was pronounced by LOWRIE, J., accompanied by the following opinion :—

" The owner of goods, insured in the hands of a common carrier, has two contracts for their safe delivery, that of the insurer and that of the common carrier, and the contract of insurance sometimes covers the very risk for which the carrier is liable. But the owner cannot recover for his own benefit in both; for our law is never administered so as to become an instrument of speculation; it in no case sanctions a double compensation. If it were otherwise, in such cases as this insurances would become mere gambling contracts—insurances against events which work no injury. And if the liability of the insurer, or payment of the loss by him, exonerated the carrier from his liability, then we should have contracts by which common carriers would be discharged from the care and fidelity which arises from their occupation, and this is contrary to the policy of the law.

" Contracts of insurance, though they may, as between the insured and the insurer, cover the same risks as the law imposes upon carriers, yet, as against the carrier, they cannot be allowed to affect his usual liability as such. He still stands as insured against all accidents, except those excepted by the law and by his contract, and, so far as he is concerned, the insurer is answerable only for the other accidents contemplated by the policy. An insurance, so far as it is against the proper risks of the carrier, is in substance an engagement by the insurer to pay on the happening of the loss, and to take upon himself the burden of enforcing the carrier's liability.

" This is a case of insurance of goods, where, on the happening of the loss, they were abandoned by all concerned to the insurers. What, then, is the effect of the abandonment? It is undoubtedly an equitable assignment of the goods, and of all the remedies which the insured has against the carrier for the recovery of them or their value, with an implied reservation of the right of the insured to use those remedies, still for his own benefit, for all goods not covered by the policy, and if the insurer should fail to pay: 2 Phil. Ins., 282, 388; Marsh Ins. 691; Mason *v.* Lainsberry, 26 Eng. C. L. R. 36; London Ass. Co. *v.* Same, Ib. 97; Clark *v.* Hundred of Blything, 9 Ib. 77; Ætna Ins. Co. *v.* Tyler, 26 Wend. 385; Atlantic Ins. Co. *v.* Storrow, 5 Paige, 285; Meyer *v.* Barker, 6 Binn. 236.

"Here the policy did not cover the whole amount of the goods lost, but the amount insured by it was duly paid by the insurers; and it follows that the remedies against the carrier were, by operation of law, *pro tanto* assigned to the insurers, to be recovered by them after the insured shall have received the balance of this loss in full. And as there can be but one recovery against the carriers, this action is, in the first place, for the benefit of the owner of the goods for the balance of his loss; and, in the second place, for the benefit of the insurers for the loss paid by them, so far as they have an equitable claim against the defendant to be refunded therefor.

"In an ordinary case, the plaintiff would be entitled to recover the whole amount of his loss, with interest, which, in this case, is $1,349.54, with interest; that is to say, for himself $517.59, and for the use of insurance company $831.95, with interest on each.

"But is this the ordinary case of payment by the insurer, where the carrier is liable? It must be borne in mind, that this is an equitable remedy as to the $831.95, in favour of the insurance company. We must, therefore, inquire what equity the company has against the carriers. To the extent before indicated, the carriers, as well as the underwriters, are insurers; the underwriters against one class of losses, and the carriers against another. Here the defendants are liable by reason of a loss arising, not from want of care and fidelity as carriers (for the case as stated must prevail over the general allegations of the declaration, though it is referred to as part of the case), but merely because of their having changed the risk of the goods, by transhipping them from the 'Marion' to the 'Export' without license. It resembles, therefore, a case of deviation, and the defendant's liability is clear, and was assumed in the agreement: Frott *v.* Woods, 1 Gallis, 443. But that very transhipment changed the nature of the defendant's liability. Instead of being liable as carriers only, with the owners of the 'Export' answerable over to them, they became liable as ordinary insurers likewise.

"It seems to me, therefore, that for that part of the claim to which the insurance company is by operation of law subrogated, the defendants stand precisely in the position of insurers, unless it appear that the 'Export' (the agent of defendants for part of the voyage) was sunk from some defect of the vessel or of its management, and this cannot be inferred in a case stated.

"So far as the insurers are concerned, this is an equitable action, and must be treated as if it were a bill for contribution.

Their insurance was not in the faith of any particular vessel, as it is admitted, and it was no breach of duty, *as to them,* that the goods were transhipped; their insurance was for goods in any sufficient vessel. Here, then, the carriers and the underwriters were insurers of the same goods against the same risks—against the very accident that happened. Neither has committed any wrong against the other, and I cannot perceive that either has any superior equity to the others. It is, therefore, equivalent to a case of double insurance, where each insurer must contribute in proportion to the risk assumed: 5 Paige, 293–4.

"The present case, therefore, is partly legal and partly equitable in its character, and the judgment must be adapted to the case. The plaintiff is entitled to indemnity for the balance of his loss, and the insurance company is the equitable assignee of the rest of the claim, not to recover the whole from the defendants as carriers, but to recover contribution as insurers; and to save subsequent disputes, we must define the share of each.

"How shall they contribute? The defendants stand as insurers for the whole value of the goods, $2,632.46, and the insurance company for the amount paid by them on the same goods, $2,114.87. In that proportion must they contribute for the real loss of $831.95; or the insurance company having paid the whole, is entitled to contribution in that proportion. The defendant's share of the loss is therefore $461.33. This, with $517.59, yet needed to indemnify the plaintiff, with interest on each, should be the amount of the judgment.

"Let judgment be entered in favour of the plaintiff for the sum of $1,406.59, of which sum $756.12 is for the benefit of the plaintiff, and to be first paid, and $650.47 is for the use of the Cincinnati Insurance Company."

The plaintiff below assigned for error upon his writ, that the court erred in not entering judgment for the plaintiff for $2,057, with interest, to which he was entitled. The substance of the error, as stated upon the paper-book, being, that the court adjudged that the insurance company and the defendant stood in the relation of joint insurers, *pro tanto,* and ordered that the amount of the loss, paid by the insurance company to the plaintiff, should be divided between the insurers on the policy and the defendants.

*Shaler* and *Stanton,* for the plaintiff in error.

*M'Candless* and *Loomis,* contrà.

The opinion of this court was delivered by

GIBSON, C. J.—Each party to these two writs has assigned an error : the plaintiff, that he was not allowed to recover the entire value of the goods for himself and the insurer; and the defendants, that they were compelled to contribute rateably for the payment made in discharge of the policy.

In such a case, the peril having been within both the contract of bailment and the contract of insurance, the mind is at first impelled towards the conclusion reached by the judge below, that the carrier and underwriter are bound to contribute on the principle of double insurance.    But a carrier is not an insurer, though he is sometimes inadvertently called so.    In respect to the extent of his responsibility, not the nature of it, he is said to be effectually such ; for the law raises a conclusive presumption of misconduct against him in relation to every loss, not caused by either of the perils excepted by implication from the terms of his contract.    But his is not a contract of indemnity, independent of the care and custody of the goods.    It is a contract of transportation and safe delivery, in consideration of a premium, not merely for a risk incurred, but for labour expended.    Unlike an underwriter, a carrier is not entitled, by the conditions of his contract, to have notice given him of a loss; or to be furnished with preliminary proofs of it; or to receive a cession of the fragments of the property ; or to have the loss adjusted on principles peculiar to the contract of insurance.    These and other discrepancies show that he is not in any sense an insurer. Still it would be just to put him on a footing with the insurer, if their innocence or their demerits were equal and mutual; but it necessarily so happens that when a carrier is liable for a loss at all, it is on the ground of actual or presumptive negligence.    Even if innocent in fact, he has consented, by the terms of his contract, to be dealt with as if he were not so ; and hence it is, that his case has a less meritorious claim to indulgence than that of an insurer, who may have entered into his contract of indemnity on the credit of his particular vigilance.    In salt-water policies, the name of the master is matter of substance ; and there is the same reason to presume that a carrier's reasonable skill in the navigation of the particular river, enters into the calculation of a fresh-water risk.    To allow the carrier, therefore, to call on the insurer for contribution, would allow him to share his misfortune with his neighbour, whom he has deceived, though brought about by his own misconduct.

As the author of the loss, therefore, the carrier is the party to bear it; and as the insurer, who in this case bore a part of it for

him, has a right to be reimbursed, there must be a remedy of some sort to enforce it. The shipper has sued on the contract of bailment, not only in his own right for the unpaid balance due to himself, but as a trustee for what has been paid by the insurer in ease, of the carrier; and the supposed difficulty is to see how a legal and an equitable demand can be joined in the same action. But the title of the plaintiff is altogether legal; and his right of action is the same as that of an obligee who sues for a debt in part, equitably assigned. The real difficulty is in the supposed inability of the court to restrain the carrier from setting up the insurer's payment of his part of the loss as satisfaction of so much of the demand at law. That the insurer may sue in the name of the shipper for reimbursement, where he has paid the entire loss, is shown by Harford *v.* Maynard, Marsh. Ins. 161; Mason *v.* Lainesbury, 3 Doug. 61; The London Assurance Co. *v.* Lainesbury, Ib. 245, and Clark *v.* The Inhabitants of Blything, 3 Dowl. & Ryl. 489; and in these the plaintiff must have met and surmounted the same difficulty. In Mason *v.* Lainesbury, Lord Mansfield said: " Every day the insurers are put in the place of the insured. In every abandonment it is so." But what would be the value of the insurer's action in the name of the shipper, if the court could not prevent his own payment from being pleaded against him? It would see that the shipper did not receive double satisfaction; but it would allow the carrier to use the defence no further. What remedy could the insurer have, if he could not have an action in the name of the shipper? There is a *dictum* of Lord Kenyon, in Bird *v.* Thompson, 1 Esp. R. 336, that an underwriter liable for a loss by the barratry of the master, may have an action *ex delicto* against him; but he acknowledged that he knew of no precedent for it. Still, what action could the insurer have in his own name, where, as here, there could not be two actions on the contract of bailment? It has been suggested that he might have *indebitatus assumpsit* for money paid to the carrier's use. It would be no kindness to subject the carrier to separate actions for the same duty. Nor would the interest of the insurer be jeoparded by allowing the shipper to recover for him. The money might be stopped in court, or the carrier might call on the attorney to file his warrant. But the decisive objection to an action for money paid is, that there is neither privity nor precedent request on the part of the carrier to sustain it. Unlike joint obligors in a bond, the parties were bound by different contracts and for the performance of different duties. As regards the carrier, the insurer's payment was volun-

tary; and though it was payment on compulsion as regards the shipper, it was compulsion induced, not by the liability of the carrier, but by the insurer's own liability on his own contract; and in this respect, his payment of the loss was unlike a stranger's payment of rent to release his chattels from distress; which has been substituted as an equivalent for the tenant's request. There the tenant was exclusively bound by his covenant; here both parties were bound by different contracts, each for himself, from the beginning. The insurer paid in discharge, not of the carrier's duty, but of his own; and by compulsion, not of law, but of a personal contract into which he had entered, not at the carrier's instance. It would, therefore, require us to do more violence to the principles of the action of *indebitatus assumpsit*, to sustain it against the carrier, than to sustain an action on the contract of bailment in the name of the shipper, for the insurer's use. Nothing would be necessary but to restrain the carrier from setting up the insurer's payment of the loss, as *pro tanto* extinguishment of his own liability; and though the common law will not protect the interest of a *cestui que trust* through the vicissitudes of a trial, we have seen that the common-law courts have taken care of the insurer's interest in England, probably because an action of assumpsit, letting, as it does, the parties into an examination of the consideration and nature of the contract, has, in some measure, the qualities of a bill in equity. In this state, where chancery principles are strained through legal forms, there is neither real nor apparent difficulty in modulating the carrier's defence. In this case, the insurer and the shipper could not sever; and the action was well brought, respectively for the use of each, in the name of him who had the legal title.

Judgment reversed, and judgment for the plaintiff for the amount of the whole loss.