WEBB et al. v. SOUTHERN RY. CO.

(District Court, S. D. Alabama, N. D.   August 17, 1916.)

No. 536.

1. REMOVAL OF CAUSES ☞89(1)—PROCEEDINGS FOR REMOVAL—TRANSFER OF JURISDICTION.

On the filing by a defendant in a state court of a sufficient petition and bond in conformity to the removal statute, if the record on its face shows the right of petitioner to a removal, the jurisdiction of the state court ceases and that of the federal court attaches, notwithstanding the refusal of the state court to order a removal; any question of the removability of the cause being for the determination of the federal court.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 162, 165; Dec. Dig. ☞89(1); Appeal and Error, Cent. Dig. § 724.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. REMOVAL OF CAUSES ⬤⟹31—DIVERSE CITIZENSHIP—UNNECESSARY PARTIES.
    In determining the removability of a cause, indispensable parties only
    are to be considered.
    [Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 71;
    Dec. Dig. ⬤⟹31.]

3. REMOVAL OF CAUSES ⬤⟹31—PROCEEDINGS FOR REMOVAL—PARTIES FOR PUR-
    POSE OF REMOVAL.
    To an action by the owner to recover for loss of property by fire al-
    leged to have been caused by the negligence of defendant, insurance com-
    panies which issued and paid policies covering part, but not all, of the
    property destroyed are not indispensable parties for the purpose of de-
    termining the removability of the cause; the entire legal right of action
    being in the owner and the insurers having only an equitable right to
    share in the recovery.
    [Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 71;
    Dec. Dig. ⬤⟹31.]

4. PARTIES ⬤⟹6(2)—ACTION FOR USE OF ANOTHER—CONSTRUCTION OF STATUTE.
    Such an action is not one brought by the owner for the use of the in-
    surers within the meaning of Code Ala. 1907, § 2490, which provides that
    "in all cases where suits are brought in the name of the person having
    the legal right for the use of another, the beneficiary must be considered
    as the sole party on the record."
    [Ed. Note.—For other cases, see Parties, Cent. Dig. § 7; Dec. Dig.
    ⬤⟹6(2).]

5. REMOVAL OF CAUSES ⬤⟹31—PARTIES FOR PURPOSE OF REMOVAL—EFFECT OF
    LOCAL STATUTE.
    The interest of the insurers in such action being a purely equitable one
    in the proceeds of any recovery, they could not be made indispensable
    parties by a local statute to deprive a federal court of jurisdiction on
    removal.
    [Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 71;
    Dec. Dig. ⬤⟹31.]

6. REMOVAL OF CAUSES ⬤⟹115—PARTIES FOR PURPOSE OF REMOVAL—EFFECT OF
    CONFORMITY STATUTE.
    The conformity statute (Rev. St. § 914 [Comp. St. 1913, § 1537]) cannot
    be invoked to deprive a federal court of its rightful jurisdiction of a
    cause on removal.
    [Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 245,
    247, 248, 251; Dec. Dig. ⬤⟹115.]

At Law. Action by John C. Webb, individually and for the use of
the Queen Insurance Company of America and the London & Lan-
cashire Fire Insurance Company, the Queen Insurance Company of
America, and the London & Lancashire Fire Insurance Company,
against the Southern Railway Company. On motion to remand to
state court. Denied.

Garber & Garber, of Birmingham, Ala., and King & Spalding, of
Atlanta, Ga., for plaintiffs.
Pettus, Fuller & Lapsley, of Selma, Ala., for defendant.

HENRY D. CLAYTON, District Judge. This cause is submitted
upon the plaintiffs' motion, which is in the nature of a motion to
remand to the state court. The action in this case was instituted
on August 10, 1915, in the law and equity court of Marengo county,

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Ala. There are four counts in the complaint, varying from each other in minor respects. For present purposes it is not necessary to consider more than one of them, the first, which with the above caption is in the following language:

"*First Count.* The plaintiffs, John C. Webb, for the use of himself and the Queen Insurance Company of America, a corporation, and the London & Lancashire Fire Insurance Company, a corporation, and the Queen Insurance Company of America, a corporation chartered and existing under the laws of the state of New York, and the London & Lancashire Fire Insurance Company, a corporation chartered and existing under the laws of the United Kingdom of Great Britian and Ireland, claim of defendant, Southern Railway Company, a body corporate, the sum of $50,000 as damages due by reason of the wrongful act and negligence of the said defendant in this: For that heretofore on, to wit, the 26th day of January, 1915, the said defendant was running and operating a steam railway through Demopolis, Ala., in the said county of Marengo, and was running and operating thereon a steam locomotive; that the plaintiff John C. Webb, on the said date, to wit, the 26th day of January, 1915, was the owner of a certain compress building, including platforms, sheds, brick boiler house, together with the equipment of compress machinery therein contained, and a certain ice house storage building, located on the north side of the railroad track, or tracks, of the said Southern Railway in Demopolis, Ala., and near the said railroad tracks, and plaintiffs aver that said property, to wit, said buildings, machinery, and other property, so destroyed was of the value of $50,000, and that said buildings, machinery, and other property, including said ice house storage building, were, on, to wit, the 26th day of January, 1915, destroyed by fire, which fire was occasioned by the negligence of said defendant, Southern Railway Company, as follows: Said fire was caused by sparks emitted from an engine being operated on said track or tracks of said Southern Railway Company adjoining the premises upon which said property above described was situated, said engine being operated by said Southern Railway Company. Plaintiffs aver that said Southern Railway Company's said engine was not equipped with proper spark arresters, and that the same was so imperfect that, instead of arresting the sparks therefrom, it emitted large quantities of sparks into the air, endangering said property adjacent to its tracks, and that said condition of said engine was negligence; that the failure to have spark arresters on said engine which would prevent said quantity of sparks from escaping was negligence, and that by reason of such negligence large quantities of sparks were emitted, from and by which the said compress building was ignited and it and the other said property was destroyed by fire.

"Plaintiff further avers that as a consequence of said negligence of the said defendant, its agents, servants, or employés, the said property of the value aforesaid was set on fire and destroyed by sparks from a locomotive operated by the defendant on its said track, or tracks.

"The plaintiffs aver that the said property, except the said ice house storage building, had been before, and was on the 26th day of January, 1915, insured against loss by fire by the said London & Lancashire Fire Insurance Company in the sum of $14,500, of which amount $689 was insurance upon the said compress building, and the sum of $13,811 was insurance upon machinery and personal property contained on the premises aforesaid, and that said property was insured against loss by fire by the Queen Insurance Company of America, in the sum of $21,000, of which $14,405.50 was insurance upon said compress building, and $6,595.50 was insurance upon said machinery and property above mentioned. Said policies were written in the name of John C. Webb & Sons, but plaintiff John C. Webb was the owner of all of said property and was insured by said policies, and the sums hereinafter stated were paid by said insurance companies to him.

"Plaintiffs further aver that because of the issuance of the policies of insurance upon said property and of the loss by fire, the said London & Lancashire Fire Insurance Company paid to the owner thereof, to wit, the plaintiff, John C. Webb, the sum of $12,262.66, and the said Queen Insurance

Company did pay to the said owner the sum of $19,931.84. By reason of the said payments the said insurance companies so paying the same became and were subrogated to the claim of the said John C. Webb, plaintiff, against the said Southern Railway Company as a wrongdoer for the destruction of said building to an amount equal to the payments so made by them, and, furthermore, upon the said several payments and in consideration thereof, the said John C. Webb, the plaintiff, did assign, set over, and transfer in writing to the said London & Lancashire Fire Insurance Company all rights, claims, interests and choses in action, which he had against said Southern Railway Company, for its liability for the burning or destruction of said property to the extent of said payments above mentioned so made to him by said London & Lancashire Fire Insurance Company, and did assign and transfer in writing, to said Queen Insurance Company of America all claims and demands which he had against said Southern Railway Company arising from or connected with said loss or damage to the extent of an amount equal to the above-stated sum so paid by said Queen Insurance Company of America to said John C. Webb. By reason of which said several assignments, the said plaintiffs London & Lancashire Fire Insurance Company and the Queen Insurance Company of America became and are joint owners with the said plaintiff John C. Webb in and of the right of recovery for the damage of property aforesaid against the said Southern Railway Company.

"Plaintiffs further aver that the said John C. Webb was, as was well known to the said Southern Railway Company, engaged in the business of compressing cotton at said compress, and that the destruction of said compress occurred during the season for the compressing of cotton; that by reason of the destruction of said property the said plaintiff John C. Webb was prevented from compressing 7,500 bales of cotton, which were offered to said Webb for compression at said compress after the happening of the said fire and while he was proceeding with the utmost diligence to restore said compress, and before the same could be restored; the price for compressing cotton which plaintiff Webb would have received for compressing said 7,500 bales of cotton was 8½ cents per hundred pounds, and the profits thereof were 30 cents per bale above the cost of compression; that said cotton was shipped without being compressed because of the destruction of said compress plant and the deprivation of its said use, whereby said plaintiff John C. Webb was damaged in the sum of $2,250, which sum he is entitled to recover as a part of the damages inflicted by said Southern Railway Company by reason of the destruction of said property and as arising out of said loss by fire, which was occasioned by the negligence of the defendant aforesaid.

"All of which has been to the damage of the said plaintiffs in the sum first above stated."

Within the time allowed for pleading in the state court, the defendant presented its written application in proper form and substance for the removal of the cause. This application was accompanied by a bond, conditioned as required by law, which was approved by the judge of the state court. Upon the hearing that court refused to make the order of removal. Thereupon, and in due time, the defendant filed in this court a transcript of the proceedings in the state court, with a petition asking Judge Harry T. Toulmin, United States District Judge for the Southern District of Alabama, to restrain plaintiffs from the prosecution of their suit in the state court, alleging, in effect, that as a matter of law this court has jurisdiction of the controversy, and that this court should hear and determine same. Judge Toulmin issued the order, upon bond being given by the defendant, restraining the plaintiffs from the prosecution of their suit in the state court until the question of the removability of the cause to this court should be settled.

[1] 1. The defendant complied with every requirement of law governing the removal of causes from a state court to a federal court. This, in and of itself, operated as a removal, provided the cause was removable. In other words, under the circumstances shown, if the cause be removable to the federal court, this court will treat it as having been removed, although the judge of the state court declined to make the proper order. Crehore v. Ohio & M. Ry. Co., 131 U. S. 240, 9 Sup. Ct. 692, 33 L. Ed. 144; Railroad Co. v. Koontz, 104 U. S. 5, 15, 26 L. Ed. 643; City of Montgomery v. Postal, etc., Cable Co. (D. C.) 218 Fed. 471. See, also, Boatmen's Bank v. Fritzlen, 135 Fed. 650, loc. cit. 653, 68 C. C. A. 288, 291, where Sanborn, Circuit Judge, for the court said:

"When a petition for removal and the bond required by the act of Congress are filed, and the record on its face shows the right of the petitioner to a removal, the jurisdiction of the state court ceases, and that of the federal court attaches."

In Chesapeake & Ohio Ry. Co. v. McCabe, 213 U. S. 207, 216, 217, 29 Sup. Ct. 430, 434 (53 L. Ed. 765), in speaking of the removal statute, the court said:

"It is apparent that these provisions are intended to confer jurisdiction upon the United States Circuit Court (now the District Court) to determine for itself the removability of a given cause, and it has been accordingly held in this court that, notwithstanding the refusal of the state court to remove the case, the party desiring a removal may file a transcript of the record in the Circuit Court (now the District Court) of the United States, and if the case was a removable one, it is immaterial that the state court has denied the petition for removal. Kern v. Huidekoper, 103 U. S. 485 [26 L. Ed. 354], and cases therein cited. And it was held in Traction Co. v. Mining Co., 196 U. S. 239 [25 Sup. Ct. 251, 49 L. Ed. 462], that, notwithstanding the refusal of the state court to make an order of removal, the controversy being removable to the United States Circuit Court (now District Court), that court might protect its jurisdiction by injunction against further proceedings in the state court."

[2, 3] 2. The complaint shows that the plaintiffs are John C. Webb, a citizen of Alabama, London & Lancashire Fire Insurance Company, a British corporation, and the Queen Insurance Company of America, a New York corporation, and that the defendant, Southern Railway Company, is a Virginia corporation.

In their written brief plaintiffs state:

"This suit was brought first to enforce the rights of the plaintiff insurance companies, claiming under subrogation, and also to enforce their rights as assignees of a partial interest in the chose in action arising out of the destruction of certain property through negligence"

—and contend that:

"Application to remove must be based on the idea that the insurance companies can be disregarded as parties plaintiff. Otherwise, the case could not be removed, as all the plaintiffs and all the defendants must possess the requisite residence and citizenship. Smith v. Lyon, 133 U. S. 315 [10 Sup. Ct. 303, 33 L. Ed. 635]."

Analysis of the complaint shows that John C. Webb owned all the property described therein at the time it was negligently, as alleged, burned by the defendant or its employés. It is further shown that the

London & Lancashire Fire Insurance Company and the Queen Insurance Company of America had insured certain parts of the property alleged to have been so destroyed; that the policies of insurance did not cover a certain "ice storage house," described in the complaint and for the destruction of which damages is asked; and, further, that the policies did not cover the alleged loss of Webb on account of the unrealized profits which he claims he would have received from compressing 7,500 bales of cotton if his compress had not been so destroyed, and which profits he avers would have been $2,250. The complaint states that the policy issued by the London & Lancashire Fire Insurance Company was for $14,500; and that this company paid Webb $12,262.66 on account of the loss under such policy; and that it is subrogated to Webb's rights thereunder; and that he has assigned and transferred it to said company; and that the policy of the Queen Insurance Company of America was for $21,000; and that this company paid Webb on account of the loss covered by this policy $19,931.84; and that it is subrogated to Webb's rights thereunder; and that he has assigned and transferred it to said company. It will be observed, therefore, that the amounts paid to Webb by the two insurance companies total $32,194.50, and that damages are claimed over and above such sum for the sole benefit of the plaintiff Webb; the whole damages asked in the complaint being $50,000. The settled rule is that:

"* * * If there are several coplaintiffs, the intention of the act (the Removal Act) is that each plaintiff must be competent to sue, and if there are several codefendants, each defendant must be liable to be sued, or the jurisdiction cannot be entertained." Smith v. Lyon, 133 U. S. 315, 319, 10 Sup. Ct. 303, 304 (33 L. Ed. 635).

And it is equally well settled that:

"* * * In controversies between citizens of different states, the jurisdiction of the federal courts depended, not upon the relative situation of the parties concerned in interest, but upon the relative situation of the parties named in the record." Coal Co. v. Blatchford, 11 Wall. 172, 175, 20 L. Ed. 179.

The question in controversy between Webb, a citizen of Alabama, the sole owner of the property and his compressing business, for the destruction of which the action was instituted, against the defendant, a citizen of Virginia, can be litigated without the presence of the Queen Insurance Company of America, a citizen of New York, and the London & Lancashire Fire Insurance Company, an alien. Neither of the insurance companies is a necessary and indispensable party to Webb's controversy with the railway company. The case here, therefore, is to be treated as between Webb, a citizen of Alabama, and the railway company, a corporation and citizen of Virginia, and if rightly reduced to this status the cause is removable, for it is a controversy between a citizen of one state against a citizen of another state. Judicial Code, § 28, Act March 3, 1911, c. 231, 36 Stat. 1094 (Comp. St. 1913, § 1010); N. Y. Const. Co. v. Simon (C. C.) 53 Fed. 1; Barney v. Latham, 103 U. S. 205, 26 L. Ed. 514; Bacon v. Rives, 106 U. S. 99, 1 Sup. Ct. 3, 27 L. Ed. 69; Fraser v. Jennison, 106 U. S.

194, 1 Sup. Ct. 171, 27 L. Ed. 131; Wood v. Davis, 18 How. 467, 15 L. Ed. 460.

The insistence of the plaintiffs is, however, that the joinder of the Queen Insurance Company of America, a citizen of New York, as party plaintiff, with Webb, a citizen of Alabama, raises a barrier against the jurisdiction of this court; that because of such fact the case is not removable. Of course, if the New York corporation had not been made a party plaintiff, the action would then have been by a citizen of Alabama and an alien, the British corporation, as parties plaintiff, against the Virginia corporation, party defendant, and the cause would then have been removable; the requisite jurisdictional amount being shown to be involved in the controversy. On the other hand, the defendant's contention is that the New York insurance company, as well as the British insurance company, is not an indispensable party to the suit.

It must be admitted, I think, that if the New York insurance company is not an indispensable party to the suit, then this court ought to, and will, so far as this motion is concerned, not regard that company as a party to the suit. As was said in Rogers v. Penobscot Mining Co., 154 Fed. 606, loc. cit. 610, 83 C. C. A. 380, 384:

"In a determination of the jurisdiction of the national courts and the right to remove causes of action to them, indispensable parties only should be considered, because all others may be dismissed or disregarded, if their presence would oust or restrict the jurisdiction or the right."

This language was taken from Boatmen's Bank v. Fritzlen, 135 Fed. 657, 68 C. C. A. 295, and as apropos here let me quote further from that case:

"Justice is proverbially blind, but a court cannot, and ought not to, fail to see the patent facts which a record discloses, or to perceive the unavoidable deduction it compels; and, where the only rational inference from the pleadings and the record is that an improper party or a sham cause of action has been injected into a suit for the sole purpose of defeating the jurisdiction of the federal court over the real controversy, pleading and evidence to that effect aliunde are neither indispensable nor necessary, and the Constitution and the acts of Congress vest in the court the power, and impose upon it the duty, to find from the record alone the attempted fraud, and to prevent its perpetration."

3. Is the Queen Insurance Company, an indispensable party? Certain it is this company has no interest in the damages sought by Webb for the destruction of the "ice storage house," nor has it any interest in the damages claimed by Webb on account of the destruction of his cotton compressing business, and also, it is indisputable that the Queen Insurance Company of America has no interest in the policy issued by the London & Lancashire Fire Insurance Company.

"An indispensable party is one who has such an interest in the subject-matter of the controversy that a final decree between the parties before the court cannot be made without injuriously affecting his interests or leaving the controversy in such a situation that its final determination may be inconsistent with equity and good conscience."

"Every other party who has any interest in the controversy or the subject-matter which is separable from the interest of the other parties before the court, so that it will not necessarily be directly and injuriously affected by a decree which does complete justice between them, is a proper party to a

suit.  But he is not an indispensable party, and if his presence would oust the jurisdiction of the court the suit may proceed without him.  Sioux City, etc., Ry. Co. v. Trust Co. of N. A., 82 Fed. 124, 126, 27 C. C. A. 73, 75"; Rogers v. Penobscot Mining Co., 154 Fed. 606, 83 C. C. A. 380.

And, of course, the same rule obtains where the action is at law, as was the case of Rogers v. Penobscot Min. Co., supra.

Of course, all the property and business for which damages are sought in this action belonged to the plaintiff Webb, and the action could properly have been brought by him to recover on every element of damages, or for every item of injury made the basis of the complaint against the defendant railway company.  But the plaintiffs say that the New York insurance company is an indispensable party because the policy of insurance issued by it was paid in part to Webb, and was by him transferred and assigned to it.  According to the complaint the buildings and property were of greater value than the insurance money paid to Webb; and it is shown that the insurance companies did not pay the whole amount of the loss, or the full amount stated in the policies.  It seems to me that this cause of action could have been brought in the name of Webb alone, that all damages could have been recovered which are claimed in the complaint, and that it was not necessary to make mention of the insurance companies.  Indeed, the defendant would not have been allowed on the trial to even suggest that the insurance companies had issued policies on a part of the property destroyed, and that they had paid in part these policies, but not in full, or that the plaintiff Webb had assigned the claim, or had assigned the policies, to the insurance companies in consideration of the partial payments thereunder.  In Hall & Long v. Railroad Companies, 80 U. S. 367, 371–373, 20 L. Ed. 594, it is said:

"In Gales v. Hailman, 11 Pa. 515, it was ruled that a shipper, who had received from his insurer the part of the loss insured against, might sue the carrier on the contract of bailment, in his own right, not only for the unpaid balance due to himself, but as trustee for what had been paid by the insurer in aid of the carrier, and that the court would restrain the carrier from setting up the insurer's payment of his part of the loss as partial satisfaction.  So in Hart et al. v. Western Railway Co., 13 Metc. [Mass.] 99 [46 Am. Dec. 719], it was held that where underwriters had paid a loss by fire caused by a locomotive of a railroad corporation, the owner might recover also from the corporation for the use of the underwriters, and that he could not release the action brought by them in his name.  There is also a large class of cases in which attempts have been made by insurers who had paid a loss to recover from the party in fault for it, by suit in their own right, and not in the right of the assured.  Such attempts have failed, but in all the cases it has been conceded that suits might have been maintained in the name of the assured party for the use of the insurers.  And such is the English doctrine settled at an early period.

"It has been argued, however, that these decisions rest upon the doctrine that a wrongdoer is to be punished, that the defendants against whom such actions have been maintained were wrongdoers, but that, in the present case, the fire by which the insured goods were destroyed was accidental, without fault of the defendants, and therefore that they stood, in relation to the owner, at most in the position of double insurers.  * * *  A carrier is not an insurer, though often loosely so called.  The extent of his responsibility may be equal to that of an insurer, and even greater, but its nature is not the same.  His contract is not one for indemnity, independent of the care and custody of the goods.  He is not entitled to a cession of the remains of

the property, or to have the loss adjusted on principles peculiar to the contract of insurance; and when a loss occurs, unless caused by the act of God, or a public enemy, he is always in fault. The law raises against him a conclusive presumption of misconduct, or breach of duty, in relation to every loss not caused by excepted perils. Even if innocent, in fact, he has consented by his contract to be dealt with as if he were not so. He does not stand, therefore, on the same footing with that of an insurer, who may have entered into his contract of indemnity, relying upon the carrier's vigilance and responsibility. In all cases, when liable at all, it is because he is proved, or presumed to be, the author of the loss. There is nothing, then, to take the case in hand out of the general rule that an underwriter, who has paid a loss, is entitled to recover what he has paid by a suit in the name of the assured against a carrier who caused the loss."

In South. Ry. Co. v. Blunt & Ward, 165 Fed. (C. C.) 258, 262, a case similar in some respects to this, Judge Toulmin said:

"If from the pleadings it appeared that the Transportation Mutual Insurance Company had paid to the plaintiff only a part of the loss, they would be jointly interested in the recovery from the indemnitors, Blunt & Ward, and the plaintiff could maintain the action in his own name and recover the full amount of the loss. As to the amount paid by the insurance company, it would become a trustee for said company. If the insurance company had paid the plaintiff all of the loss, then this suit should be by the insurance company alone in the name of the railway company as the nominal plaintiff for the use of the insurance company. If only a part of the loss had been paid by the insurer, the insured would be entitled to the residue; and how the money recovered is to be divided between them is a question which interests them alone, and in which the defendants are not concerned. In order to recover under the complaint as now drawn, the insurance company and the railway company must be jointly interested in each of the losses counted on in the complaint. If the insurance company has paid all of any individual loss to the railroad company, then the insurance company alone would be interested in this loss, and the railroad company would have no right to recover, and unless both plaintiffs can recover, neither can. In the last amendment which the plaintiff proposes to make, the counts to be added by amendment claim only for losses sustained by the railroad company, and on which losses no insurance was in force, and no payments have been made by the insurance company to reimburse the railroad company for these losses. This would make the railway company solely interested in some of the counts of the complaint, and the insurance company solely interested in others, and this amendment cannot be allowed, as both plaintiffs must be jointly interested in the recovery to be had under each count."

And, again, it was said in that case (165 Fed. 261):

"'When an insurance company pays to the assured the amount of the loss of the property insured, it is subrogated in a corresponding amount to the assured's right of action against any other person responsible for the loss. This right of the insurer against such other person is derived from the assured alone, and can be enforced in his right only. At common law it must be asserted in the name of the assured. In a court of equity or admiralty, or under the modern codes of practice, it may be asserted by the insurance company in its own name when it has paid the assured the full value of the property destroyed—citing authorities. But the rule seems to be well settled that, when the value of the property exceeds the insurance money paid, the suit must be brought in the name of the assured. In such an action the assured may recover the full value of the property from the wrongdoer, but as to the amount paid him by the insurance company he becomes a trustee; and the defendant will not be permitted to plead a release of the cause of action from the assured, or to set up as a defense the insurance company's payment of its part of the loss.' Hart v. Railroad Co., 13 Metc. (Mass.) 99, 46 Am. Dec. 719; Hall v. Railroad Co., 13 Wall. 367, 20 L. Ed. 594."

In M. & M. R. Co. v. Jurey, 111 U. S. 584, 594, 595, 4 Sup. Ct. 566, 570 (28 L. Ed. 527), the court said:

"The payment of the total loss by the insurer works an equitable assignment to him of the property and all the remedies which the insured had against the carrier for the recovery of its value. Mason v. Sainsbury, 3 Doug. 61; Yates v. Whyte, 4 Bing. New Cases, 472; Clark v. Hundred of Blything, 2 Bar. & Cress. 254; Ætna Insurance Co. v. Tyler, 16 Wend. [N. Y.] 385; Atlantic Ins. Co. v. Storrow, 5 Paige [N. Y.] 285. This rule is so strictly applied, that when two ships, belonging to the same owner, came into collision with each other, and one of them sank and became a total loss, it was held that the insurers of the lost ship did not, upon their payment of the total loss, become entitled to make any claim for the loss against the insured as the owner of the ship in fault in the collision, for their right existed only through the owner of the ship insured, and not independently of him, and as he could not have sued himself, they could have no remedy against him. Simpson v. Thompson, 3 App. Cas. 279. See, also, Globe Ins. Co. v. Sherlock, 25 Ohio St. 50.

"In Gales v. Hailman, 11 Pa. 515, it was held that 'a shipper who has received from the insurer the part of the loss insured against may sue the carrier on the contract of bailment, not only in his own right for the unpaid balance due to himself, but as trustee for what has been paid by the insurer in case of the carrier;' and upon the trial of such a case, the court will restrain the carrier from setting up the insurer's payment of his part of the loss as partial satisfaction.

"Insurers of a ship which has been run down and sunk by the fault of another ship are, upon their payment of a total loss, subrogated to the right of the insured to recover therefor against the owners of the latter vessel, and if their policy was a valued one, their payment of this value will give them the whole spes recuperandi, and the right to the whole damages, though the insured vessel was, in fact, worth a larger sum than the valuation named in the policy. North of England Association v. Armstrong, L. R. 5 Q. B. 244. See, also, Clark v. Wilson, 103 Mass. 219, 227 [4 Am. Rep. 532].

"The authorities above cited which relate to marine policies apply, as well as the other cases cited, to the question in hand, for in Hall & Long v. Railroad Companies, 13 Wall. 367 [20 L. Ed. 594], it was held that 'there is no reason for the subrogation of insurers by marine policies to the rights of the assured against a carrier by sea which does not exist in support of a like subrogation in case of an insurance against fire on land.'

"We are of opinion, therefore, that the recovery in this case might properly have been, as it was, for the entire loss sustained by the nominal plaintiffs with regard to the amount of insurance paid. The only effect of the provision of section 2891, Code of Alabama, is to make the party for whose use the suit is brought dominus litis. and to give it the same rights as if it were the assignee of the cause of action. Its recovery is on the nominal plaintiff's cause of action. But as there is no formal assignment, and the suit is in the name of the nominal plaintiff, the party beneficially interested is only bound to establish the cause of action, without proof of his equitable right to the recovery.

"It follows from these views that the complaint was sufficient for the case as presented by the evidence, and that the evidence tended to sustain the case stated in the complaint."

Furthermore, the defendant, against whom judgment might be rendered, would have no interest in a division of the fruits of the judgment, for that is a matter between the assured and the insurer; the former being a trustee for the benefit of the latter. The law is well stated in Long v. Kansas City, etc., Ry. Co., 170 Ala. 635, 642, 54 South. 62, 64, where it is said:

"The question of who will be entitled to the proceeds of the recovery, the insurer or the insured, is a matter between them, and constitutes no defense

to an action for the damages, caused by the wrong, which, in any event, must be brought in the name of the owner and insured, although it might be for the use of the insurer. 24 Am. & Eng. Law, pp. 308–330; Perrot v. Shearer, 17 Mich. 48, 55, 56; Clark v. Wilson, 103 Mass. 219–227, 4 Am. Rep. 532; Hayward v. Cain, 105 Mass. 213; Weber v. Morris & E. R. Co., 35 N. J. Law, 409, 10 Am. Rep. 253."

Again, the insurance companies have no such interest in the case as that they could bring the suit in their own name, because they have not paid the entire loss. Whatever interest they may have is equitable —not legal—and cannot be enforced at law in the name of the insurance company. Hall & Long v. Railroad Companies, supra. They are represented in the action by Webb, as trustee; and the residence of the trustee, and not that of the beneficiary, controls the question of jurisdiction, as in case of a suit by an executor, where his residence controls and not that of the legatee. Knapp v. Railway Co., 87 U. S. 117, 123, 124, 22 L. Ed. 328; Montgomery's Manual of Fed. Proc. p. 139. In Over v. Lake Erie R. Co. (C. C.) 63 Fed. 34, the insured had been paid only a part of the loss by a number of insurance companies, and the insured brought suit in his own name and for the use of several of the companies against the railway company. One of the insurance companies did not join in the complaint. The court held that the entire right of action was retained by the insured, Over, and that the suit should have been brought in his name alone, that the equity of the insurance company, if any, could have no effect on the right of action resting in Over, and that the assignments of loss by Over to the insurance companies of certain proportions of the claim could have no effect on the jurisdiction of the federal court. The court said:

"The cause of action for the alleged wrong accrued to Over alone. It was a right of action at law, triable by jury. It was not assignable, in whole or in part, so as to invest the assignee with a legal title. By the payment of the policies the insurers became subrogated, pro tanto, to an equitable right in the cause of action. The written assignment executed by Over to the insurance companies gave them nothing beyond an equitable right. Neither at common law nor under our statutes[1] does the assignment of a part of the cause

---

[1] The reference to "our statutes" by Judge Baker in the case of Over v. Lake Erie R. Co., supra, is to the following Indiana statutes: Burns Annotated Statutes of Indiana 1894, § 251. "Every action must be prosecuted in the name of the real party in interest, except as otherwise provided in the next section; but this section shall not be deemed to authorize the assignment of a thing in action not arising out of contract." Section 252. "An executor, administrator, a trustee of an express trust, or a person expressly authorized by statute, may sue without joining with him the person for whose benefit the action is prosecuted. A trustee of an express trust, within the meaning of this section, shall be construed to include a person with whom, or in whose name, a contract is made for the benefit of another. It shall not be necessary to make an idiot or a lunatic a joint party with his guardian or committee, except as may be required by statute."

It is stated in Cunningham v. E. & T. H. Ry. Co., 102 Ind. 483, 484 [1 N. E. 800, 804, 52 Am. Rep. 683], referred to by Judge Baker in Over v. Lake Erie, etc., supra, as follows: "In speaking of the claim of the wrongdoer to the benefit of insurance money received by the injured party, a recent writer on the law of damages says: 'There can be no abatement of damages on the principle of partial compensation received for the injury, where it comes from a col-

of action for a tort invest the assignee with any part of the legal title. The plaintiff Over still retains the entire legal right to the cause of action. As the owner and holder of the entire legal title to the cause of action, and having also the entire beneficial ownership of the unassigned part of it. he can, in this state, as at common law, maintain in his own name an action for the whole amount of the loss. Cunningham v. Railroad Co., 102 Ind. 478, 1 N. E. 800 [52 Am. Rep. 683]. His right of action is at law, because his title is purely legal. The title and interest of the insurance companies are wholly equitable, and extend to but a part of the cause of action. Can Over, whose right of action is at law, by joining the insurance companies, whose right of action is in equity, deprive the railroad company of the right of removal? He could have brought his suit originally in this court against the railroad company, but it would have had to be brought in his name alone. His right of action, being legal, and embracing the entire loss, is separable from the equitable causes of action of the insurance companies. The distinction between actions at law and suits in equity is firmly maintained in the federal system of jurisprudence, and state legislation will not be permitted to alter or abridge this distinction. Scott v. Neely, 140 U. S. 106, 11 Sup. Ct. 712 [35 L. Ed. 358]; Cates v. Allen, 149 U. S. 451, 13 Sup. Ct. 883, 977 [37 L. Ed. 804]. If the practice in the state courts permits the joinder of parties having the entire legal title with others having only an equitable title or interest in a part of the cause of action, still, in my opinion, such joinder will not defeat the right of the federal court to separate the parties having a legal cause of action from those having an equitable right; and if, when thus separated and arranged, the action at law is removable, the presence of parties having a mere equitable interest will not defeat such right. If the assignee of an equitable interest in a cause of action of a legal nature is a necessary or proper party with the owner of the entire legal title, then, in every case where a cause of action arises, of which the federal court might rightfully have taken cognizance by removal, this right could be defeated by the assignment, to a citizen residing in the state of the defendant's residence of a small interest in the claim or cause of action. Such construction would make the defendant's right of removal, in every case, depend on the will of the owner of the cause of action. I think the motion to remand should be overruled; and it is so ordered."

---

lateral source, wholly independent of the defendant, and is as to him res inter alios acta. * * * Nor will proof of money paid to the injured party by an insurer or other third person, by reason of the loss or injury, be admissible to reduce damages in favor of the party by whose fault such injury was done. The payment of such moneys not being procured by the defendant, and they not having been either paid or received to satisfy in whole or in part his liability, he can derive no advantage therefrom in mitigation of damages for which he is liable. As has been said by another, to permit a reduction of damages on such a ground would be to allow the wrongdoer to pay nothing, and take all the benefit of a policy of insurance without paying the premium.' 1 Sutherland, Damages, p. 242. The doctrine here declared was recognized, approved, and acted upon by this court, in Sherlock v. Alling, 44 Ind. 184. In that case, a similar defense was interposed to that pleaded by the appellee in the second, third, and fourth paragraphs of its answer, in the case in hand. In considering this defense the court there said: 'It proposes to use, as a defense to damages resulting from the wrongful act of the defendants, by way of set-off, recoupment, or in mitigation of such damages, pecuniary benefits received by the injured party, to which the defendants had not contributed, and not resulting from, or connected with, the act causing the death —benefits which it is fair to presume would have been realized at a future day, without the aid of their wrongful act.' So, in Ohio, etc., R. Co. v. Dickerson, 59 Ind. 317, it was held by this court that the fact that the salary of a person, injured through the negligence of the defendant, is paid by his employer during the time he is disabled by such injury cannot mitigate the damages such injured party may recover, in an action therefor."

4. To defeat the jurisdiction of this court, the plaintiffs rely upon section 5159, Code Ala. 1907, which is in these words:

"Claims against railroad companies, for injuries to property, may be assigned in writing, and each successive assignee thereof may sue thereon in his own name."

The constitutionality of this section has never directly been passed upon by the Supreme Court of Alabama. That court did not find it necessary to do so in L. & N. R. R. Co. v. Landers, 135 Ala. 509, 33 South. 483, where the constitutionality of the statute was attacked. There it was said:

"The first contention of counsel in argument for appellant is, that the subject-matter of the suit is a chose in action, of which there can be no valid assignment; the insistence being that section 877 of the Code (which is section 5159 of the present Code), authorizing the assignment in writing of claims against railroad companies for injuries to property, and suits thereon in the name of the assignee, is an unjust discrimination against railroad corporations as a class, and violative of section 12, art. 14, of the Constitution of 1875. There is no merit in this contention, since the chose in action here assigned is a claim for damages growing out of the alleged breach of a contract, and the action is in form ex contractu. There can, we think, be no doubt of the assignability of such a claim apart from the statute. The right of the plaintiff to sue in his own name on the claims assigned is not raised in the pleadings, and on the case as presented to the jury was not involved in any of the rulings on the charges."

Here the defendant contends that this statute (section 5159, supra, which is the same as section 877, Code Ala. 1896) is unconstitutional, and insists that, this question not having been passed upon by the court of last resort of the state, it is now the duty of this court to pass upon it. Of course, it is settled that the federal courts will, as a rule, follow the constructions of a state statute given by the highest court of the state. But this rule is not followed in every case, as, for example, it was not followed in Gelpcke v. City of Dubuque, 1 Wall. 175, 205, 17 L. Ed. 520, where Mr. Justice Swayne for the court said:

" * * * It is insisted that in cases involving the construction of a state law or Constitution, this court is bound to follow the latest adjudication of the highest court of the state. Leffingwell v. Warren, 2 Black, 599 [17 L. Ed. 261], is relied upon as authority for the proposition. In that case this court said it would follow 'the latest settled adjudications.' Whether the judgment in question can, under the circumstances, be deemed to come within that category it is not now necessary to determine. It cannot be expected that this court will follow every such oscillation, from whatever cause arising, that may possibly occur."

But there has been no decision by the Supreme Court of Alabama construing this statute to be constitutional or unconstitutional.

Section 240, Const. Alabama 1901, declares:

"All corporations shall have the right to sue, and shall be subject to be sued, in all courts in like cases as natural persons."

This is the exact language of section 12, art. 14, of the Constitution of 1875. In the case of Smith v. L. & N. R. R. Co., 75 Ala. 449, a statute, the language of which was as follows, was held to be in violation of that provision of the Constitution:

"When the death of any minor child is caused by the wrongful act or omission of any officer or agent of an incorporated company, or private association of persons, the father of such child, or if the father be not living, the mother, may maintain an action against such corporation or private association of persons, * * * and may recover such damages as the jury may assess."

There Chief Justice Stone said:

"Within the last 20 years very important constitutional provisions, federal and state, have been adopted. Article 14 of the amendments to the Constitution of the United States declares (section 1) that 'no state shall * * * deny to any person within its jurisdiction the equal protection of the laws.' Speaking of this provision, Justice Field, of the United States Supreme Court, in County of San Mateo v. South. Pac. R. R. Co. (116 U. S. 138, 6 Sup. Ct. 317, 29 L. Ed. 589) said: 'It not only implies the right of each to resort, on the same terms with others, to the courts of the country for the security of his person and property, the prevention and redress of wrongs, and the enforcement of contracts, but also his exemption from any greater burdens or charges, than such as are equally imposed upon all others under like circumstances.' 8 Am. & Eng. R. R. Cases, 1–11 (8 Sawyer [C. C.] 238, 13 Fed. 722, 757). And Circuit Justice Sawyer, in the same case (page 33) said: 'In my judgment, the word "person" (in this clause of the Fourteenth Amendment) includes a private corporation.' See note to that case on page 56. This question, however, would seem to be settled by our own state Constitution, art. 14, § 12, which ordains that 'all corporations shall have the right to sue, and shall be subject to be sued, in all courts, in like cases as natural persons.' 'In like cases as natural persons' must mean that where the cases are alike, the cause of action the same description of contract or tort, there must be no discrimination between corporations and natural persons, in the matter of prosecuting or defending suits. A tort which will support an action for one will support it for the other, and a defense available to one is available to the other. Mayor v. Stonewall Ins. Co., 53 Ala. 570; Green v. State, 73 Ala. 26."

In the case of South & North Railroad Co. v. Morris, 65 Ala. 193, the constitutionality of the statute assailed was in this language:

"Any corporation, person or persons, owning or controlling any railroad in this state, or any complainant against such corporation, person or persons, taking an appeal from a decision rendered by a justice of the peace, in a suit for damages brought under the provisions of section 1711, and failing to sustain such appeal, and to increase or reduce the judgment before the appellate court, shall be liable for a reasonable attorney's fee incurred by reason of such appeal, to be assessed by the court, not to exceed $20; and the attorney's fee shall be part of the costs" in the case.

And, Mr. Justice Somerville for the court said that:

"After a careful consideration of this question, during which it has been held under protracted advisement by the whole bench, a conclusion has been reached, which clearly persuades us that this particular section of the Code is violative of both the Constitution of the state and that of the United States."

In Birmingham-Tuscaloosa Ry. Co. v. Carpenter (Ala.) 69 South. 626, decided May 20, 1915, Chief Justice Anderson rendered the opinion for the court holding the following provision of the Alabama Automobile Law (Laws 1911, p. 649) unconstitutional:

"34. The contributory negligence of the person operating or driving any motor vehicle in this state shall be imputed to every occupant of said motor vehicle at the time of such negligence in actions brought by such occupant or his personal representatives for the recovery of damages for death or personal injury whether the relation of principal and agent exists between such

person operating or driving such motor vehicle and such occupant or not, provided that the provisions of this section shall not apply to passengers paying fare and riding in a motor vehicle regularly used for public hire."

There it was said that:

"It [this section] is an unwarranted and unjust discrimination between persons of the same class; that is, it discriminates against persons riding in motor vehicles, because it does not reach those riding in any other kind of vehicles under similar terms and conditions. * * * The section denies an equal protection of the law to all persons similarly situated, and is an unwarranted discrimination. Cooley's Const. Limitations, 391; South & North Ala. R. Co. v. Morris, 65 Ala. 193; Smith v. L. & N. R. R. Co., 75 Ala. 449."

The reasoning employed, which is unnecessary to be given here, in the three cases quoted from is unanswerable. It may be the Supreme Court of Alabama will hold, as defendant's counsel insist it will, that the statute (Code Ala. § 5159) is unconstitutional, because it singles out railroad companies from all other companies or persons, and declares that claims against railroad companies for injury to property may be assigned, etc., and that, therefore, it is in conflict with the provisions of the Constitution of Alabama which ordains that all corporations shall have the right to sue, and shall be subject to be sued, in like cases as natural persons. And Judge Stone said, in Smith v. L. & N. R. R. Co., supra, that:

" 'In like cases as natural persons' must mean that where the cases are alike, the cause of action the same description of contract or tort, there must be no discrimination between corporations and natural persons, in the matter of prosecuting or defending suits."

Further, that:

"The sum of these provisions is, that no burden can be imposed on one class of persons, natural or artificial, which is not, in like conditions, imposed on all other classes."

Admittedly, if the statute is unconstitutional, then, any assignment that the insured Webb may have made to the insurance company can give the insurance company no right, and therefore, whatever interest they may have in any judgment recovered of the railroad, on account of the tort sued for, must be founded upon the right independent of the statute. But, for a decision of this case, it is not necessary for me to declare the statute obnoxious to any provision of the Constitution of the United States or of the state of Alabama; for, as indicated, neither insurance company is an indispensable party to the action; and that every item of damage set forth in the complaint is recoverable by Webb, and damage for some of the items is recoverable by him and him only.

[4] 5. Section 2490, Code Ala. 1907, is in this language:

"In all cases where suits are brought in the name of the person having the legal right for the use of another, the beneficiary must be considered as the sole party on the record."

This statute can have no application to this case, although plaintiffs insist that it has, and that under it the insurance companies have the right to join in the action. This does not seem to me to be sound.

I do not think that this statute confers upon them any right that they do not have independent of the statute.

The insurance companies issued the policies to Webb. The suit is not upon the policies, is not ex contractu, but is for the alleged wrongful destruction of Webb's property by the defendants. The only rights the insurance companies have is to be subrogated pro tanto to such share in the judgment recoverable for the loss as may be equal to the amount paid by them to Webb under the policies.

As before stated, in other language, the suit is for the destruction of certain property owned by Webb solely and insured by the companies, and also to recover damages for certain other individual property and business of Webb, upon which the insurance companies had taken no risk, and in which they had no possible interest. This suit is not like an action brought on an official bond to which the above statute would apply; for instance, a bond in which a probate judge, register in chancery, or other official, is named as the nominal beneficiary, but where the real party or parties to the cause in which the bond was given is or are the real beneficiary or beneficiaries. Nor is it like the case of the payee of a note as plaintiff for the use of the original plaintiff (Cowan v. Campbell, 131 Ala. 211 [1]); nor is it like that of an assignee of a note for subscriptions to stock where the assignee of a judgment against a corporation may be considered the sole party plaintiff in an action against the stockholders. Lehman Durr Co. v. Clark, 85 Ala. 109, 4 South. 651; Wooldridge v. Holmes, 78 Ala. 568.

[5] 6. But, whatever may be the construction of this Alabama statute by the courts of that state, and regardless of the local application of the Alabama statute, the distinction between law and equity has been preserved in the federal courts. Such courts must be, and are, the judges of their own jurisdiction, and cannot be bound by mere local rulings and practice regulations which may be employed so as to render a cause which is equitable only to be adjudicated at law. Here the insurance companies have an equity in the damages recoverable for the loss to the extent of the insurance which they would be bound by their policies to pay, and which they did pay. As they have no further or other interest in the matter—the other damages properly sued for by Webb—and as they are not indispensable, that is, not necessary, parties to the action now under consideration, the Alabama statute cannot be of such avail as to deprive this court of jurisdiction over the controversy. Over v. Lake Erie, etc., Ry. Co., supra.

That Congress has always sedulously intended to preserve the distinctions between law and equity, which distinctions are plainly recognized in the Constitution of the United States, is evidenced by much federal legislation, and was recently further evidenced by the act of Congress approved March 3, 1915, 38 Stat. 956, c. 90. There the Congress has kept abreast with the advanced thought of the day and passed this law. The paramount idea carried in the act is that courts are established and maintained for the administration of justice, and not to furnish a forum chiefly for the exhibition of the skill of intellectual gladiators—sometimes forgetful of the rights of the parties

235 F.—38        [1] 31 South. 429.

litigant to have justice administered. So this act, just referred to, provides that if a party has brought his suit at law, whereas it should have been in equity, or vice versa, the cause may, upon application, be transferred to the proper side of the docket, law or equity, as the case may be, the pleadings properly reformed, and the cause proceeded with. Thus the delay or injustice which the courts were compelled to cause in numerous instances, as in Buzard v. Houston, 119 U. S. 347, 7 Sup. Ct. 249, 30 L. Ed. 451, and many other cases, can be avoided.

[6] 7. The Conformity Act, § 914, Rev. Stat. (Comp. St. 1913, § 1537), cannot be invoked in this case to oust this court of its plain and rightful jurisdiction over this cause. The purpose of this statute was to bring about uniformity in the law of procedure in the federal and state courts in the same locality, taking cognizance of the statutory enactments of many states. The language of the statute is that:

"The practice, pleadings, and forms and modes of proceeding in civil causes, other than equity and admiralty causes, in the circuit and district courts, shall conform as near as may be, to the practice, pleadings, and forms and modes of proceeding existing at the time in like causes in the courts of record of the state within which such circuit and district courts are held," etc.

As was said by Mr. Justice Matthews in Erstein v. Rothschild (C. C.) 22 Fed. 61, loc. cit. 64, quoting in part from I. & St. L. R. Co. v. Horst, 93 U. S. 291, 300, 23 L. Ed. 898:

" 'The conformity is required to be' as near as may be, 'not as near as may be possible, or as near as may be practicable. This indefiniteness may have been suggested by a purpose; it devolved upon the judges to be affected the duty of construing and deciding, and gave them the power to reject, as Congress doubtless expected they would do, any subordinate provisions in such state statutes which, in their judgment, would unwisely incumber the administration of the law, or tend to defeat the ends of justice, in their tribunals. While the act of Congress is to a large extent mandatory, it is also to some extent only directory and advisory.' The act of Congress, at any rate, does not require the adoption, with the local statutes, of the local interpretation which may have been put upon them, or which may, from time to time, be enforced. It must be held that the body of the local law thus adopted in general must be construed in the courts of the United States in the light of their own system of jurisprudence, as defined by their own Constitution as tribunals, and of other acts of Congress on the same subject. It can hardly be supposed that it was the intent of this legislation to place the courts of the United States in each state, in reference to their own practice and procedure, upon the footing merely of subordinate state courts, required to look from time to time to the Supreme Court of the state for authoritative rules for their guidance in those details. To do so would be, in many cases, to trench in important particulars, not easy to foresee, upon substantial rights, protected by the peculiar Constitution of the federal judiciary, and which might seriously affect, in cases easily supposed, the proper correlation and independence of the two systems of state and federal judicial tribunals."

Having reached the conclusion that the insurance companies (or either of them) are not indispensable parties to this action, it is the duty of this court to follow what is believed to be warranted by law, reason, and justice. It is plain from the words of the complaint, and all the attendant facts and circumstances which are gathered from

a consideration of the record in the case, that the insurance companies were brought into this suit solely for the purpose of defeating the jurisdiction of this court. Such a purpose cannot be approved. As was said in Kelly v. Chicago & A. Ry. Co. (C. C.) 122 Fed. 286, loc. cit. 292:

"The afterthought of bringing the old Kansas City, etc., Ry. Co. into this controversy is so palpably for the purpose of preventing the removal by the real defendant into this jurisdiction that the rule strictissimi juris should be rigidly applied. As suggested by Mr. Justice Miller in Arapahoe County v. Railway Co., 4 Dil. 277, Fed. Cas. No. 502, courts should be astute not to permit devices to become successful which are used for the very purpose of destroying the right of removal."

And, Mr. Justice Van Devanter, for the court, in C. & O. Ry. Co. v. Cockrell, 232 U. S. 146, loc. cit. 152, 34 Sup. Ct. 278, 280 (58 L. Ed. 544) said:

"A civil case, at law or in equity, presenting a controversy between citizens of different states and involving the requisite jurisdictional amount, is one which may be removed by the defendant, if not a resident of the state in which the case is brought; and this right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." Authorities cited.

In making the temporary order, restraining the plaintiffs from prosecuting their suit in the law and equity court of Marengo county, Ala., until this motion should be determined, Judge Toulmin held tentatively that the removability of the cause was at least debatable, and directed that further action in the state court be stayed until a hearing could be had here. And, now after having heard arguments for and against removal, I entertain no doubt that the cause is removable under the facts shown by the transcript of the record, and, the cause being removable, and all statutory requirements for removal having been complied with, that it has been removed into this court. The defendant's case, according to the record, is such that the statute governing removals has, proprio vigore, operated to that end.

Order will be entered overruling the motion to remand this cause to the state court, and making the temporary restraining order issued by Judge Toulmin permanent.

